UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POLICE BENEVOLENT ASSOCIATION OF THE
CITY OF NEW YORK, INC. and PATRICK HENDRY,
as President of the Police Benevolent Association of the
City of New York, Inc.,

            Plaintiffs,

        -against-

CITY OF NEW YORK, NEW YORK CITY CIVILIAN
COMPLAINT REVIEW BOARD, SHERENE
CRAWFORD, in her official capacity as Interim Chair of
the New York City Civilian Complaint Review Board,
and JONATHAN DARCHE, in his official capacity as
Executive Director of the New York City Civilian
Complaint Review Board,

            Defendants.

Civil Action No.  26-3243

**COMPLAINT**

SPENCER FANE LLP
711 Third Avenue, 17th Floor
New York, New York 10017
(212) 907-7300
mdaly@spencerfane.com

*Of counsel*:

Office of the General Counsel of the Police
Benevolent Association of the City of New
York, Inc.
125 Broad Street
New York, New York 10004
(212) 298-9100
fvasselman@nycpba.org

Plaintiffs Police Benevolent Association of the City of New York, Inc. ("PBA") and Patrick Hendry, as President of the PBA (collectively, "Plaintiffs"), for their Complaint against defendants City of New York (the "City"), New York City Civilian Complaint Review Board ("CCRB"), its Interim Chair, Sherene Crawford, in her official capacity, and its Executive Director, Jonathan Darche, in his official capacity (collectively, "Defendants"), respectfully allege as follows:

## PRELIMINARY STATEMENT

1.      This action challenges CCRB's deliberate policy of disseminating, for upload into a permanent online database, three specific categories of the most inflammatory, stigmatizing, and life-altering ***unsubstantiated*** accusations – alleged sexual misconduct (including sexual assault and rape), racial bias/profiling, and false official statements (the "Stigmatizing Unsubstantiated Complaints") – tied to identifiable police officers in the New York City Police Department ("NYPD"). CCRB itself acknowledges that Stigmatizing Unsubstantiated Complaints constitute special categories of unsubstantiated accusations that do extreme prejudice to the reputations of police officers warranting confidential treatment. These inflammatory unsubstantiated accusations also imperil the safety of officers, who have no control over false complaints being filed against them. Yet, per a policy announced in October 2025, CCRB is knowingly disseminating those life-altering smears in response to Freedom of Information Law ("FOIL") requests for upload to a third-party online database, where they are published for the lifetimes of the officers and beyond and are available to employers, landlords, educational institutions, banks, and the public at large, despite affording officers no process to challenge such disclosures or remove the defamatory content from the database. Plaintiffs, on behalf of the more than 22,000 men and women who serve as police officers in the NYPD, seek to halt CCRB's ongoing and indiscriminate disclosure policy for Stigmatizing Unsubstantiated Complaints with

officer identifying information and obtain a declaration that the disclosures and ongoing policy violate police officers' due process rights under the U.S. and New York Constitutions.

2.  To be clear, this case involves only Stigmatizing Unsubstantiated Complaints – *i.e.*, those alleging sexual misconduct, racial bias/profiling, and false official statements, and that are not substantiated by CCRB – as such Stigmatizing Unsubstantiated Complaints are particularly inflammatory, stigmatizing, and damaging to the reputations, safety, and employment prospects of police officers, including unsubstantiated accusations of serious criminal conduct such as rape, sexual assault, and perjury. Moreover, Plaintiffs are not seeking to require blanket withholding of Stigmatizing Unsubstantiated Complaints. Rather, at issue is CCRB's indiscriminate policy of disclosing Stigmatizing Unsubstantiated Complaints ***with officer identifying information*** and the resultant publication of such information in an online database. To protect officers' due process rights, CCRB should be required to redact officer identifying information if it disseminates Stigmatizing Unsubstantiated Complaints or employ a neutral characterization for such categories of allegations. Alternatively, due process requires that officers must be afforded reasonable and fair notice and a name-clearing hearing on the merits before any disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information were to be made.

3.  CCRB was established in 1993 as an all-civilian agency of the City to investigate certain categories of complaints by the public against officers in the NYPD. CCRB's jurisdiction includes complaints involving four categories of alleged officer misconduct, referred to as "FADO": (1) "excessive use of force," (2) "abuse of authority," (3) "discourtesy," and (4) "use of offensive language." Recent CCRB rule changes and Charter amendments have expanded CCRB's reach under the "abuse of authority" prong of its jurisdiction, folding in allegations of

2

sexual misconduct, racial bias/profiling, and false official statements – the three categories at issue here.

4.      Officers have no control over false and meritless complaints being filed against them just for doing their jobs, and there is a well-documented, long-standing problem of such false and meritless complaints to CCRB affecting thousands of officers every year. CCRB invites unsworn complaints over the telephone and online, and the City imposes no consequence for filing a false complaint against an officer with CCRB. Indeed, CCRB even invites complaints from individuals with no first-hand or personal knowledge of an alleged incident. Thus, as CCRB well knows, complaints are often filed against officers to harass or retaliate against them or to distract from the complainant's own criminal conduct. CCRB's own data shows that year after year, thousands of unsubstantiated complaints are filed against officers, and the overwhelming majority of complaints filed with CCRB result in no finding of wrongdoing by the officer.

5.      CCRB is in a position to mitigate some of the adverse effects of its self-made problem of false and meritless complaints being filed against officers by appropriately protecting officer privacy and safety when it comes to public disclosure of such unsubstantiated accusations. CCRB itself acknowledges that public disclosure of unsubstantiated allegations of sexual misconduct, racial bias/profiling, and false statements – *i.e.*, the Stigmatizing Unsubstantiated Complaints at issue – is "very prejudicial" to officers' character. For that reason, CCRB's own public database neutralizes the prejudicial effects of these unsubstantiated allegations on officers' lives and careers by publishing them as "Abuse of Authority: Other."

6.      Despite its acknowledgment of the highly prejudicial effects from the publication of Stigmatizing Unsubstantiated Complaints, in October 2025, CCRB announced a blanket

policy of producing those same unsubstantiated, inflammatory, life-altering allegations –

*together with officer identifying information* – in response to FOIL requests. Pursuant to that

policy, CCRB does not conduct any individualized review or redaction of the records to protect

officer privacy or safety. Nor are the subject officers given notice of the request for or

dissemination of Stigmatizing Unsubstantiated Complaints to afford them an opportunity to

object.

7.      Worse yet, CCRB knows – as it publicly acknowledged – that such Stigmatizing

Unsubstantiated Complaints that it produces in response to FOIL requests are ingested and

published in the third-party online database 50-a.org (the "50-a Database"), which posts officer

complaint histories – regardless of the lack of veracity of the accusations – and includes officer

photographs. CCRB's knowing disclosure of the Stigmatizing Unsubstantiated Complaints for

upload to the 50-a Database makes the unsubstantiated allegations publicly searchable in

perpetuity. Information disclosed by CCRB already available in the 50-a Database includes

*unsubstantiated* allegations of rape, sexual assault, and other sexual misconduct *tied to named

and photo-identified officers*, which CCRB produced for upload into the database without any

consideration of the lack of veracity of such inflammatory allegations.

8.      CCRB's publication regime for Stigmatizing Unsubstantiated Complaints inflicts

severe reputational harm on police officers, jeopardizes their safety, and risks crippling their

employment prospects. Meanwhile, CCRB does not provide officers with notice or an

opportunity to be heard prior to the disclosure. And, as part of its blanket disclosure policy,

CCRB fails to conduct an individualized review process or redact identifying details, and officers

have no ability to remove the false and meritless accusations from the public database, where

they remain forever in the public domain creating limitless prejudice. A long line of due process

case law holds that such widespread and perpetual dissemination of unsubstantiated accusations in a public database, with associated detriment to reputation and risk of harm to employment prospects – without any evidentiary threshold that must be satisfied before publication – violates due process. Such is the case here where at issue are special categories of the most stigmatizing, inflammatory allegations that go to the core of an individual's character and employability – including allegations of serious criminal conduct such as rape and sexual assault – which CCRB is indiscriminately disseminating for upload to the 50-a Database.

9.     CCRB cannot point to its published case dispositions to attempt to justify its disclosures of Stigmatizing Unsubstantiated Complaints, because the dispositions are themselves vague and misleading and do nothing to prevent the real-world damage to an officer's life and career from publicizing such inflammatory accusations. Indeed, CCRB recently abandoned its case dispositions of "Unsubstantiated" and "Exonerated" that CCRB had used for almost 30 years since its inception, now using new, made up terms such as "Unable to Determine," "Unable to Investigate," or "Within NYPD Guidelines" that do not afford officers a clear statement that the matter has been closed and the officer cleared of wrongdoing. Under blackletter law, CCRB's republication of serious unsubstantiated accusations such as rape or sexual assault with no evidentiary threshold is defamatory *per se*, and the defamation is not cured simply by disseminating the false accusation with the label "Unable to Determine."

10.     CCRB also cannot dispute that there are easy, readily-available mechanisms to protect the privacy and safety rights of police officers while balancing any negligible public interest in unsubstantiated complaint data. CCRB could easily redact officer identifying information from Stigmatizing Unsubstantiated Complaints, as is already required under FOIL's individualized review process, which CCRB is flouting. Alternatively, CCRB can mitigate the

5

defamatory effects from public disclosure of Stigmatizing Unsubstantiated Complaints by using the neutral categorization of "Abuse of Authority: Other" that CCRB *already employs* for its own public database.

11.     Plaintiffs seek injunctive and declaratory relief because CCRB's policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information – even as CCRB concedes these categories are uniquely prejudicial, and knowing such data is being published on the 50-a Database – deprives police officers of protected liberty interests without due process under the U.S. and New York Constitutions.

## PARTIES

12.     Plaintiff PBA is the designated collective bargaining agent for the more than 22,000 officers employed by the NYPD in the rank of police officer.

13.     The PBA negotiates and advocates on its members' behalf with the City in matters of policy, terms and conditions of employment, and all matters relating to its members' general welfare, including, without limitation, matters relating to CCRB and that agency's policies, Charter, and rules, and other policies, rules, regulations, and laws that impact its members. The core function of the PBA is to advocate for, protect, and advance the rights and interests of its members. The PBA has successfully brought prior litigations on behalf of its members challenging CCRB policies and rules. The PBA's members have been named, and will continue to be named, in the Stigmatizing Unsubstantiated Complaints that CCRB has disseminated and continues to disseminate, and their information has been uploaded, and will continue to be uploaded, to the 50-a Database as a result of such disclosures, and thus they have suffered and will continue to suffer concrete and particularized injuries by CCRB's ongoing disclosure policy.

14.     Plaintiff Patrick Hendry is the duly elected President of the PBA and is a police officer in the NYPD.

15.     Defendant City is a municipal corporation duly organized and existing by and under the laws of the State of New York.

16.     Defendant CCRB is an agency of the City, the authority of which is set forth in New York City Charter, Ch. 18-A, §§440-441. CCRB's principal place of business is located at 100 Church Street, New York, New York 10007.

17.     Defendant Sherene Crawford is the Interim Chair of CCRB and is named in her official capacity. CCRB's Chair is jointly appointed by the Mayor and City Council Speaker. CCRB's Chair is the leader of the Board and is responsible for overseeing CCRB's operations together with the Executive Director.

18.     Defendant Jonathan Darche is the Executive Director of CCRB and is named in his official capacity. The Executive Director is appointed by the Board, and acts as the Chief Executive Officer of CCRB, responsible for managing the day-to-day operations of the agency and overseeing its more than 200 employees.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1367, because this action arises in part under the U.S. Constitution and 42 U.S.C. §1983.

20.     This Court also has jurisdiction to render a declaratory judgment pursuant to 28 U.S.C. §2201.

21.     Venue lies in the United States District Court for the Southern District of New York, Manhattan, pursuant to 28 U.S.C. §1391(b), because CCRB's principal place of business is located at 100 Church Street, New York, New York.

## FACTUAL BACKGROUND

### *Overview of CCRB Structure and Jurisdiction*

22.    In 1993, the New York City Council adopted Charter §440, establishing CCRB as an all-civilian Board to investigate certain complaints by the public against NYPD officers.

23.    Charter §440(a) sets forth CCRB's purpose "that the investigation of complaints concerning misconduct by officers of the department towards members of the public be complete, thorough and impartial," and that "[t]hese inquiries must be conducted fairly and independently, and in a manner in which the public and the police department have confidence."

24.    CCRB consists of 15 members (the "Board"), five appointed by the City Council, five appointed by the Mayor, three designated by the Police Commissioner, and one appointed by the Public Advocate. The Board's Chair is appointed by the Mayor and City Council Speaker.

25.    CCRB has an Executive Director who is responsible for managing the day-to-day operations of the agency, and it has over 200 other employees, including investigators.

26.    The Charter, as implemented in 1993, limited CCRB's jurisdiction to the following categories of allegations against police officers, referred to as "FADO": excessive use of **f**orce, abuse of **a**uthority, **d**iscourtesy, or use of **o**ffensive language. Charter §440(c)(1).

27.    After a complaint within its jurisdiction is brought and, if CCRB completes an investigation, a panel of three Board members makes findings and recommendations that are submitted to the Police Commissioner for final determination.

28.    The Charter vests the Police Commissioner with final authority in matters of police discipline. Charter §§434, 440(e).

29.    If a case is substantiated by CCRB and the Police Commissioner decides to impose a different penalty or level of discipline than that recommended by CCRB, the Police

8

Commissioner is required to provide a detailed explanation of such deviation from CCRB's recommendation. Charter §440(d)(3).

***Recent Charter Amendments and CCRB Rules Changes Enlarged CCRB's Scope***

30.    A Charter Revision Commission and the City Council recently amended CCRB's jurisdiction under the Charter three times.

31.    As a result of a referendum, effective December 2019, CCRB's jurisdiction was enlarged to include alleged false statements made by an officer during the course of CCRB's investigation of a FADO complaint against that officer.

32.    Effective April 2021, the City Council amended Charter §440(c)(1) to add to CCRB's "abuse of authority" jurisdiction complaints of "bias-based policing and racial profiling."[1]

33.    Effective January 2022, the City Council amended Charter §440(c)(1) by granting CCRB power to commence FADO investigations without a complaint from a member of the public.

34.    CCRB's jurisdiction under Charter §440(c)(1) is now defined as follows:

> The board shall have the power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public or complaints initiated by the board against members of the police department that allege misconduct involving excessive use of force, abuse of authority including bias-based policing and racial profiling, discourtesy, or use of offensive language, including, but not limited to, slurs relating to race, ethnicity, religion, gender, sexual orientation and disability. The board shall also have the power to investigate, hear, make findings and recommend action regarding the truthfulness of any material official statement made by member of the police department who is the subject of a complaint received or initiated by the board, if such statement was made during the course of and in relation to the board's resolution of such complaint.

---

[1] The April 2021 Charter amendment also added a new section to the Charter, §441, relating to CCRB's new bias-based policing jurisdiction.

9

35.     CCRB also unilaterally expanded its powers, without City Council approval, through changes to CCRB's own rules. CCRB's rules are found in the Rules of the City of New York ("RCNY"), Title 38A, Chapter 1.

36.     In early 2021, CCRB, for the first time in its history, created a definition in its rules for its jurisdictional predicate "abuse of authority." CCRB defined this term as "misusing police powers," and the definition further stated: "This conduct includes, but is not limited to, improper searches, entries, seizures, property damage, refusals to provide identifying information, intentionally untruthful testimony and written statements made against members of the public in the performance of official police functions, and sexual misconduct." RCNY, Tit. 38A, §1-01.

37.     CCRB in turn defined "sexual misconduct" as "misconduct of a sexual nature alleged by a civilian against a member of the Police Department," which "includes, but is not limited to, the following examples of misconduct: verbal sexual harassment; sexual harassment using physical gestures; sexual humiliation; sexually motivated police actions such as stops, summonses, searches, or arrests; sexual or romantic propositions; and any intentional bodily contact of a sexual nature, including but not limited to, inappropriate touching, sexual assault, rape, and on-duty sexual activity." *Id.*[2]

38.     Through the promulgation of these new "definitions" in its rules, CCRB unilaterally expanded its powers to, among other things, two new categories of complaints that

---

[2] In *Lynch v. N.Y. City Civilian Complaint Review Bd.*, 183 A.D.3d 512, 518 (1st Dep't 2020), the Court struck down a prior attempt by CCRB to expand its jurisdiction to sexual misconduct complaints on the procedural ground that "the resolution announced a sweeping policy change that materially affected the rights of all alleged victims of sexual misconduct and allegedly offending police officers," but "CCRB undisputedly did not follow the public vetting process required by CAPA for adopting a new rule."

CCRB for almost 30 years since its inception consistently recognized as being outside its jurisdiction: (i) complaints alleging sexual misconduct, including criminal conduct such as rape and sexual assault; and (ii) complaints alleging false official statements made by officers.[3]

*CCRB Investigation Process and Case Dispositions*

39.     CCRB invites complaints from members of the public by a variety of means, including in-person, telephone, online, or mail. Moreover, CCRB does not require a complaint to be sworn to be filed with CCRB and thereby become a permanent part of the officer's record and subject to CCRB's disclosure policy at issue herein.

40.     The mere filing of a CCRB complaint has serious negative effects on an officer's life and career. Once a complaint (even a false or meritless one) has been filed against an officer, damage has been done. As CCRB explains, "[a]ll complaints, regardless of the outcome, remain on an officer's CCRB history which is part of their personnel record at the police department."[4] Among other things, an officer will be placed on performance monitoring simply due to the number of complaints filed, regardless of the ultimate disposition of those complaints. The pendency of a CCRB investigation also has adverse employment consequences for an officer, regardless of ultimate outcome, as the officer may be placed on modified assignment or suspended from duty either at the beginning or during the course of a disciplinary investigation.

41.     Complainants can and do fabricate accusations against officers, triggering significant prejudice to the officer's life and career by virtue of the mere filing of the unsworn complaint, yet without *any* consequence to the complainant for submitting even an entirely

---

[3] In 2022, CCRB unilaterally expanded its powers yet again by adding "improper use of body worn cameras" to its rule definition of "abuse of authority." RCNY, Tit. 38A, §1-01.

[4] CCRB, *Frequently Asked Questions* (https://www.nyc.gov/site/ccrb/about/frequently-asked-questions-faq.page).

11

fabricated complaint against an officer. CCRB's process is weighted heavily against the officer from the outset.[5]

42.    Once a complaint within its jurisdiction is received, CCRB refers the complaint to its employee investigators to gather evidence. Such evidence may include documents or video, and interviews with the complainant, alleged victim, witnesses, and the subject officer.

43.    During the CCRB investigation process, the subject officer may be interrogated, but there is no ability for the subject officer to cross-examine the complainant or witnesses, nor to review or contest all of the evidence collected by CCRB and present his or her defense.

44.    If the investigation is completed, the investigators prepare a closing report, which, together with the investigative file, are provided to the Board to reach a disposition. A panel of three Board Members makes findings for each allegation, and if any allegations are substantiated, makes recommendations as to the discipline that should be imposed on the subject officer. No hearing is afforded to the subject officer before CCRB makes its final disposition of the case.

45.    The "disposition" is the Board's finding of the outcome of the case.

---

[5] CCRB only asks the complainant to sign a "verification" later in the investigation process if CCRB is able to conduct an interview of the complainant and the complainant cooperates. *See* CCRB, *Complaint Process* (https://www.nyc.gov/site/ccrb/complaints/complaint-process/complaint-process.page). As set forth herein, however, thousands of complaints are filed against officers with CCRB every year that CCRB closes as "Unable to Investigate" because, among other reasons, the complainant was uncooperative or unavailable – in other words, the complainant was unwilling to submit to a CCRB interview and/or sign a verification of the accusations in the complaint. The damage to the officer is already done, however, by the filing of the complaint. That damage is being exacerbated by CCRB's policy at issue here of disseminating for upload to a public online database even the most egregious Stigmatizing Unsubstantiated Complaints with officer identifying information, without any regard for lack of veracity and even when based on nothing but an unsworn complaint from an uncooperative complainant.

46.    For cases where the investigation was completed and the Board makes a determination on the merits, the dispositions generally fall into the following four categories:

a)  "Substantiated" – The alleged conduct is found to have occurred and is improper based on a preponderance of the evidence.

b)  "Within NYPD Guidelines" – The alleged conduct is found to have occurred but was not found to be improper by a preponderance of the evidence.

c)  "Unfounded" – The alleged conduct is found by a preponderance of the evidence not to have occurred as the complainant described.

d)  "Unable to Determine" – There is insufficient evidence to determine whether or not misconduct occurred by a preponderance of the evidence.

47.    Until CCRB changed its case dispositions with a rule change in 2022 (effective February 2023), the disposition of "Within NYPD Guidelines" was previously called "Exonerated," and the disposition of "Unable to Determine" was previously called "Unsubstantiated." CCRB's unilateral change of these disposition terms effective in February 2023 only exacerbates the prejudice to officers from the public dissemination of such unsubstantiated complaints. CCRB's ambiguous and misleading terminology "Unable to Determine" suggests that the investigation was somehow incomplete, rather than projecting the fact that no misconduct was proven after full presentation of the evidence. And unlike the term "Exonerated," the new term "Within NYPD Guidelines" does not provide a statement clearing the officer's reputation from what was established to be a meritless complaint.[6]

---

[6] In *Police Benevolent Ass'n of City of N.Y. v. N.Y. City Civilian Complaint Review Bd.*, 230 A.D.3d 1041 (1st Dep't 2024), the Court upheld CCRB's changes to the "Exonerated" and "Unsubstantiated" case dispositions solely under a CPLR Article 78 arbitrary and capricious standard. That case did not involve or address the due process issues presented here.

13

48.     There are also a significant number of cases that CCRB closes without a full investigation, or without any investigation at all. CCRB's disposition for such truncated cases is "Unable to Investigate," and they generally fall within the following categories: "Complainant/Victim/Witness Uncooperative"; "Complainant/Victim/Witness Unavailable"; and "Victim Unidentified."

49.     When CCRB substantiates a complaint, it recommends discipline ranging from formalized training, to command discipline, to the most severe: charges and specifications.

50.     Only in cases where CCRB recommends charges and specifications is the officer then afforded a right to an administrative trial. The trial of charges and specifications is generally prosecuted by a division of CCRB called the Administrative Prosecution Unit and is conducted before the NYPD Deputy Commissioner of Trials or an Assistant Deputy Commissioner of Trials. The trial verdict is then referred to the Police Commissioner for a final determination.

***CCRB's Enormous and Unaddressed Problem of False, Meritless, or Otherwise Unsubstantiated Complaints Against Officers***

51.     The City imposes no consequences or accountability on a member of the public for submitting a false, meritless, or entirely fabricated complaint against an officer to CCRB.

52.     As set forth above, CCRB does not require complaints against officers to be sworn.

53.     Moreover, pursuant to a rule change that CCRB promulgated in 2018, an individual need not even have witnessed or have first-hand knowledge of the police encounter at issue to file a complaint against an officer with CCRB. The Chair and Executive Director have discretion to investigate such complaints by "Reporting Non-Witnesses." RCNY, Tit. 38A, §1-11(b).

14

54.     Because the City fails to impose any consequences or accountability for false complaints against officers, members of the public submit false, meritless, or entirely fabricated complaints against officers to CCRB for improper purposes, such as an act of retaliation, to distract from their own criminal behavior, or to harass an officer simply for doing his or her job.

55.     CCRB's own data shows that thousands of officers are being adversely impacted by complaints filed with CCRB that never result in any finding of wrongdoing by the officer.

56.     For example, in 2025, out of a total of 5,716 closed complaints that CCRB deemed to be within its jurisdiction, *4,726* complaints (*83%*) resulted in no finding of wrongdoing by the officer (35 of which were mediated). Of the closed complaints, *639* were found to be Unfounded or Within NYPD Guidelines, meaning the complaint was entirely false or meritless. CCRB closed *2,703* (*47%*) of the complaints as Unable to Investigate, meaning CCRB did not even complete an investigation.[7] As noted above, cases that CCRB closes as Unable to Investigate include those where the complainant submitted an unsworn complaint and then was uncooperative with CCRB or unavailable. CCRB will only deem a complainant uncooperative where the complainant "does not respond to repeated attempts by the investigator to set up an interview or fails to show up for two scheduled interviews," and, at a minimum, "the investigator must send two letters and make five phone calls before a case is closed for this reason."[8] Common sense and statistics dictate that a substantial proportion of those thousands of Unable to Investigate complaints were also false or meritless.

---

[7] CCRB, *Executive Director's Monthly Report* (Jan. 2026), at 18 (https://www.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/monthly_stats/2026/01142026-monthlystats.pdf).

[8] CCRB, *Investigation Results* (https://www.nyc.gov/site/ccrb/complaints/complaint-process/investigation-results.page).

57.     In 2024, out of a total of 6,379 closed complaints that CCRB deemed to be within its jurisdiction, *5,471* complaints (*86%*) resulted in no finding of wrongdoing by the officer (51 of which were mediated). Of the closed complaints, *942* were found to be Unfounded or Within NYPD Guidelines, meaning the complaint was entirely false or meritless. CCRB closed *2,866* (*45%*) of the complaints as Unable to Investigate, meaning CCRB did not even complete an investigation.[9] Again, common sense and statistics dictate that a substantial proportion of those uninvestigated complaints were also false or meritless.

58.     According to CCRB's most recent annual report statistical appendix, for the five-year period from 2014 through 2018, out of a total of 23,079 closed complaints that CCRB deemed to be within its jurisdiction, *21,421* (*93%*) resulted in no finding of wrongdoing by the officer (1,021 of which were mediated). Of the closed complaints, *1,891* were found to be Exonerated or Unfounded, the pre-2023 terminology that CCRB used for false and meritless complaints. CCRB closed *12,828* (*56%*) of the complaints without completing an investigation.[10]

59.     To put the data in further context, NYPD officers have tens of millions of encounters with civilians each year. The number of substantiated CCRB complaints each year is miniscule relative to the number of police encounters.

60.     The enormous problem of false, meritless, or otherwise unsubstantiated complaints against officers being filed with CCRB is not new, but continues year after year for more than a decade. In 2015, CCRB's then-Chair stated specifically with respect to the problem

---

[9] CCRB, *Executive Director's Monthly Report* (Jan. 2026), at 18 (https://www.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/monthly_stats/2026/01142026-monthlystats.pdf).

[10] CCRB, *2018 Statistical Appendix*, at 61 (https://www.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/annual_bi-annual/2018_annual-appendix.pdf).

of false complaints being filed against officers, "This agency has failed to do its job in the past and this is one aspect of that. . . . We want to encourage the integrity of the process. One way to do that is to make clear there may be consequences to lying to us, serious consequences."[11]

61.     Yet, the City has done nothing to curb the acknowledged problem of false and meritless CCRB complaints against officers. Instead, CCRB is now actively exacerbating and spreading the harm through its new policy of indiscriminately disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information.

***Officers' Rights to Privacy and Safety Continue After the Repeal of Civil Rights Law §50-a***

62.     Enacted in 1976, Civil Rights Law ("CRL") §50-a created a blanket protection against disclosure, including in response to FOIL requests, for disciplinary and other personnel records of police officers, firefighters, corrections officers, and peace officers across the State.

63.     Section 50-a served the important purpose "of preventing the use of personnel records as a device for harassing or embarrassing police and correction officers." *Prisoners' Legal Servs. of N.Y. v. N.Y. State Dep't of Corr. Servs.*, 73 N.Y.2d 26, 32 (1988). The statute sought "to prevent *any* 'abusive exploitation of personally damaging information contained in officers' personnel records.'" *N.Y. Civ. Liberties Union v. N.Y. City Police Dep't*, 32 N.Y.3d 556, 564 (2018) (emphasis in original) (quoting *Daily Gazette Co. v. City of Schenectady*, 93 N.Y.2d 145, 154 (1999)). "[T]he described abuses of personnel information it was designed to prevent included harassment or reprisals against an officer or his/her family." *Daily Gazette Co.*, 93 N.Y.2d at 155 (internal quotes omitted).

---

[11] Shawn Cohen and Bob Fredericks, *CCRB Considering Perjury Charges for False Police Complaints*, N.Y. Post (Mar. 13, 2015) (https://nypost.com/2015/03/13/ccrb-considering-perjury-charges-for-false-police-complaints/).

64. Independent of CRL §50-a, the right of public access to records under FOIL is not absolute. FOIL contains separate, independent exemptions for government agencies, such as CCRB, to keep records confidential in whole or in part.

65. Pursuant to Public Officers Law ("POL") §87(2), documents or portions thereof are appropriately maintained as confidential under FOIL where, among other things: disclosure "would constitute an unwarranted invasion of personal privacy" or "could endanger the life or safety of any person."

66. On June 12, 2020, the legislature repealed CRL §50-a.

67. The repeal of CRL §50-a did not, however, alter officers' rights to privacy and safety existing under other statutes and laws, the federal and state constitutions, and common law.

68. In fact, for example, the legislature expressly relied on the continuing protections afforded by the statutory exemptions under FOIL as a justification for the repeal of CRL §50-a. The "Justification" section of the Sponsor Memorandum for the bill repealing CLR §50-a explained that "FOIL already provides that agencies may redact or withhold information whose disclosure would constitute an unwarranted invasion of privacy," and "[t]he broad prohibition on disclosure created by §50-a is therefore unnecessary."[12]

69. An earlier repeal bill by the New York State Assembly similarly explained: "FOIL already provides all public employees, including those protected under §50-a, the

_____

[12] Sen. B. S8496 (N.Y. 2020) (https://www.nysenate.gov/legislation/bills/2019/S8496).

18

protections necessary to guard against unwarranted invasions of privacy and from disclosures that could jeopardize their security or safety."[13]

70.    The Committee on Open Government, the state agency responsible for overseeing and providing advisory opinions on FOIL, also recognized the continued applicability of privacy and safety rights with the repeal of CRL §50-a, and the heightened need to protect privacy and safety in the particular context of police officers, stating:

> In urging the repeal or revision of §50-a, the Committee is not suggesting that police and correction officers should be subject to greater disclosure than other public employees, but rather that they should be subject to the same level of public disclosure and protection as required for all other public employees. FOIL provides all public employees with the protections necessary to guard against unwarranted invasions of privacy and from disclosures that could jeopardize their security or safety. While police officers have a particular need for such protections, the generally applicable FOIL exemptions are sufficient to safeguard their legitimate privacy and safety concerns.[14]

71.    The continued applicability of the FOIL exemptions following the repeal of CRL §50-a was also recently confirmed by the New York Court of Appeals in *N.Y. Civ. Liberties Union v. City of Rochester*, 43 N.Y.3d 543 (2025). The Court held that "FOIL, as amended in conjunction with the repeal of Civil Rights Law §50-a, does not deny law enforcement officers the benefit of [the privacy] exemption." *Id.* at 548. The Court held that agencies must conduct an individualized review of the subject records and evaluate the appropriateness of redactions to protect privacy:

---

[13] Ass. B. A09332 (N.Y. 2016) (https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A09332&term=2015&Memo=Y&Text=Y). Indeed, far from repealing the FOIL exemptions, the legislature added safeguards to FOIL to further protect the privacy and security of law enforcement employees, such as *requiring* agencies to redact certain personal information and allowing an additional category of redactions pertaining to minor infractions. POL §§89(2-b) & (2-c).

[14] Committee on Open Government, *2018 Report to the Governor and State Legislature* (Dec. 2018), at 5 (https://opengovernment.ny.gov/system/files/documents/2021/02/2018-annual-report.pdf).

19

Rather than withhold all such records, Public Officers Law §87(2) requires an agency to evaluate each record individually and determine whether "a particularized and specific justification" exists for denying access on the ground that disclosing all or part of the record would constitute an unwarranted invasion of privacy. Where redactions would prevent such an invasion and can be made without unreasonable difficulty, the agency must disclose the record with those necessary redactions.

*Id.* at 550 (internal cites omitted).

***CCRB's Disclosure of Stigmatizing Unsubstantiated Complaints with Officer Identifying Information Causes Severe Reputational Damage to Officers, Jeopardizes Their Safety, and Risks Irreparable Harm to their Employment Prospects***

72.     The New York Court of Appeals has held: "The State's policy also evinces a sensitivity to the possibility of irreparable harm to a professional's reputation resulting from unfounded accusations – a possibility which is enhanced by the more relaxed nature of the procedures and evidentiary rules followed in disciplinary hearings in which hearsay evidence may be received. Indeed, our Court has recognized that professional reputation once lost, is not easily restored." *Johnson Newspaper Corp. v. Melino*, 77 N.Y.2d 1, 11 (1990) (internal quotes omitted).

73.     CCRB's public disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information causes severe damage to the reputations and employment prospects of police officers.

74.     Stigmatizing Unsubstantiated Complaints go to the very core of the integrity and character of police officers, involving inflammatory accusations of alleged sexual misconduct, racial bias/profiling, and false statements.

75.     Stigmatizing Unsubstantiated Complaints involve matters – alleged sexual misconduct, racial bias/profiling, and false statements – that, by virtue of the accusation alone,

20

render the subject a pariah in the eyes of the public or someone that others feel unsafe or uncomfortable to associate with.

76.     Because individuals and businesses would not want to be associated with the matters involved in Stigmatizing Unsubstantiated Complaints – involving alleged sexual misconduct, racial bias/profiling, and false statements – the public dissemination of the accusations in a searchable, lifelong database such as the 50-a Database, as is occurring here, poses a substantial risk of interference with the employment prospects of police officers.

77.     Stigmatizing Unsubstantiated Complaints also accuse the subject officers of serious criminal conduct, including rape and other sexual misconduct and perjury. Such false criminal accusations constitute *per se* defamation under New York law.

78.     Exacerbating the stigma and prejudice to officers from CCRB's indiscriminate disclosure of Stigmatizing Unsubstantiated Complaints, in a significant number of cases where such false, inflammatory accusations are made, CCRB simply closes the case without completing an investigation or performing any investigation at all, designating the case "Unable to Investigate." Thus, the dissemination of the Stigmatizing Unsubstantiated Complaint publicizes an incredibly damaging accusation against the officer with no ability, whether before or after publication, for the officer to clear his or her name.

79.     Indeed, officers are not afforded an opportunity to have a trial to cross-examine the complainant and witnesses and present a defense unless CCRB substantiates the complaint and recommends charges and specifications. Thus, that hearing right *never* exists for the Stigmatizing Unsubstantiated Complaints at issue in this case.

80.     Even in cases where CCRB concludes, after a full investigation, that there is insufficient evidence to determine whether or not misconduct occurred by a preponderance of the

21

evidence, CCRB misleading designates the case as "Unable to Determine," exacerbating the prejudice to officers from publication of such Stigmatizing Unsubstantiated Complaint by creating the misleading impression that the matter was not in fact fully investigated and decided in the officer's favor.

81.     Courts and agencies have long recognized, and continue to do so after the repeal of CRL §50-a, that the disclosure of unsubstantiated complaints with identifying information implicates privacy concerns for the subject employees. *See, e.g.*, *N.Y. Civ. Liberties Union v. N.Y. City Dep't of Corr.*, 213 A.D.3d 530, 531 (1st Dep't 2023) ("Documents concerning unsubstantiated complaints or allegations should be disclosed *to the extent that they can be redacted to prevent an unwarranted invasion of personal privacy, including the removal of identifying details.*" (emphasis added)); *Luongo v. Records Access Officer*, 150 A.D.3d 13, 16 (1st Dep't 2017) (CCRB withheld police officer records relating to, *inter alia*, unsubstantiated matters on grounds that disclosure would constitute "an unreasonable invasion of privacy"); *Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd.*, 53 Misc. 3d 947, 950 (Sup. Ct. Kings Co. 2016), *aff'd*, 171 A.D.3d 1064 (2d Dep't 2019) (CCRB denied FOIL request in part because "to the extent your request seeks records concerning any matters that were not substantiated, any such requests would also represent an unreasonable invasion of privacy"); *LaRocca v. Bd. of Educ. of Jericho Union Free Sch. Dist.*, 220 A.D.2d 424, 427 (2d Dep't 1995) ("we find that the release of that portion of the [settlement] agreement which contains references to charges which were denied and/or not admitted by [employee] . . . would constitute an unwarranted invasion of privacy"); *W. Suffolk Bd. of Coop. Educ. Servs. v. Bay Shore Union*, 250 A.D.2d 772, 772 (2d Dep't 1998) (holding that lower court erred by authorizing disclosure of disciplinary records of employee "which recite unproven disciplinary charges"); *Santomero v.*

22

*Bd. of Educ. of Bedford Cent. Sch. Dist.*, No. 08-25405, 2009 WL 6860644, at *2 (Sup. Ct. Westchester Co. Dec. 23, 2009) (unproven disciplinary charges "are exempt from production pursuant to FOIL as their disclosure would constitute an unwarranted invasion of privacy"); *Nichols v. Gamso*, 35 N.Y.2d 35, 39 (1974) (as to complaints against judges, "the record and proceedings which do not relate to the charges sustained need not be disclosed").

82.     Those privacy and reputational concerns arising from unsubstantiated complaints are magnified in the context of Stigmatizing Unsubstantiated Complaints at issue in this case, involving accusations going to the core of integrity and character and, in some cases, accusations of serious criminal misconduct, and where the officer had no ability to defend himself or herself against the false accusations during or after the CCRB process. *See, e.g.*, *In re Carey*, 68 A.D.2d 220, 229 (4th Dep't 1979) (recognizing "the obligation of the judicial branch of government to protect the reputations of persons accused of crimes but not indicted or convicted"); *Asian-Am. Legal Defense & Educ. Fund v. N.Y. City Police Dep't*, 125 A.D.3d 531, 532 (1st Dep't 2015) ("The revelation that a certain person, business, or organization was the subject of counterterrorism-related surveillance would not only have the potential to be embarrassing or offensive, but could also be detrimental to the reputations or livelihoods of such persons or entities."); *U.S. Dep. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989) ("The privacy interest in a rap sheet is substantial. The substantial character of that interest is affected by the fact that in today's society the computer can accumulate and store information that would otherwise have surely been forgotten long before a person attains age 80, when the FBI's rap sheets are discarded."); *Dep't of Air Force v. Rose*, 425 U.S. 352, 376-77 (1976) (holding that disclosure of case summaries of ethics hearings against naval cadets implicated "privacy values"; "identification of disciplined cadets a possible consequence of even

23

anonymous disclosure could expose the formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as loss of employment or friends" (internal quotes omitted)).

83.    The Committee on Open Government has also repeatedly and consistently affirmed that unsubstantiated complaints implicate privacy concerns. For example, in opining that a disciplinary record relating to alleged firefighter misconduct could be released "except to the extent that it included charges that were dismissed or that could not be substantiated, or information relating to those charges," the Committee stated: "When allegations or charges of misconduct have not yet been determined or did not result in disciplinary action," or "are dismissed or allegations are found to be without merit," they "may be withheld based on considerations of privacy."[15]

84.    The disclosure of Stigmatizing Unsubstantiated Complaints not only severely damages officers' reputations and employment prospects, but jeopardizes their safety.

85.    Police officers are targeted for violence based on perceived misconduct and for doing their jobs.

---

[15] FOIL-AO-17195 (May 29, 2008) (https://docs.dos.ny.gov/coog/ftext/f17195.html); *see also* FOIL-AO-f93399 (Apr. 2, 1996) (https://docs.dos.ny.gov/coog/ftext/f9399.htm) (agreeing with determination of Department of Investigation to redact "the names and identifying details in memoranda relating to cases in which the DOI found there was no wrong-doing"); FOIL-AO-12005 (Mar. 21, 2000) (https://docsopengovernment.dos.ny.gov/coog/ftext/f12005.htm) ("In numerous contexts, it has been advised that records relating to unsubstantiated charges, complaints or allegations may be withheld to protect the privacy of the accused."); FOIL-AO-17301 (Aug. 18, 2008) (https://docs.dos.ny.gov/coog/ftext/f17301.html) ("Our opinion concerning a report indicating that allegations of sexual harassment could not be sustained is that such a record may be withheld on the ground that disclosure would constitute an unwarranted invasion of personal privacy."); FOIL-AO-10399 (Oct. 31, 1997) (https://docsopengovernment.dos.ny.gov/coog/ftext/f10399.htm) ("when allegations or charges of misconduct have not yet been determined or did not result in disciplinary action, the records relating to such allegations may, in my view, be withheld, for disclosure would result in an unwarranted invasion of personal privacy").

86.      Under New York law, police officer safety is implicated by disclosure of such matter as a "summary of the number of allegations, complaints and outcomes brought against" a police officer, as the disclosure of such information could result in "harassment and reprisals." *Luongo*, 150 A.D.3d at 26. While that case involved a single police officer, at issue here is the public dissemination and publication in an online database of Stigmatizing Unsubstantiated Complaints en masse, without any minimum threshold of evidence or reliability, threatening the safety of large numbers of police officers.

87.      The threat is not merely hypothetical, as police officers have been targeted for murder and other violence based on perceived misconduct or other public information.

88.      As the NYPD has acknowledged: "Officers have seen protests at their homes and death threats to themselves – and their families – even before the facts of an incident are fully known. . . . In the internet age, where personal information may be a Google search away, releasing personnel records in cases where there are allegations but the facts are not fully known . . . is a risk to officer safety."[16]

89.      In 2014, two innocent NYPD officers, Officers Wenjian Liu and Rafael Ramos, were murdered while they sat in their patrol car by an individual who purported to be seeking retaliation for police-involved incidents.[17]

---

[16] NYPD, Statement of Oleg Chernyavsky, Assistant Deputy Commissioner, Legal Matters, NYPD to N.Y. State Senate Standing Comm. on Codes (Oct. 24, 2019) (https://www.nysenate.gov/sites/default/files/oct_24th_public_hearing_on_discovery_reform.pdf).

[17] Larry Celona *et al.*, *Gunman Executes 2 NYPD Cops in Garner "Revenge"*, N.Y. Post (Dec. 20, 2014, updated July 19, 2018) (https://nypost.com/2014/12/20/2-nypd-cops-shot-execution-style-in-brooklyn/).

90.     In 2017, Officer Miosotis Familia was shot and killed at point-blank range while sitting in her patrol car because of the uniform she wore.[18]

91.     In 2018, federal authorities arrested an individual who delivered an explosive device to what he believed was the residence of one of the NYPD officers who arrested him, after he methodically conducted internet searches and made telephone calls to determine the location of the arresting officers' residences. The device ended up killing the building owner.[19]

92.     On New Year's Eve in 2022, NYPD officers were targeted by a machete-wielding man because of the uniforms they wore.[20]

93.     Similarly, courts have warned about the ease with which unstable individuals can use publicly-disclosed identifying information to seek vengeance in law enforcement matters. In *Bellamy v. N.Y. City Police Dep't*, 87 A.D.3d 874, 875 (1st Dep't 2014), *aff'd*, 20 N.Y.3d 1028 (2013), the Court held that unredacted documents with the identities of persons who spoke with police during an investigation were exempt from disclosure under the safety exemption, because "[a]fter learning the names, all one would need is an Internet connection to determine where they live and work."

94.     The same reasoning applies here, where information contained in Stigmatizing Unsubstantiated Complaints, without redaction of officer identifying information and together

---

[18] Larry Celona and Shawn Cohen, *NYPD Officer Assassinated in Police Vehicle*, N.Y. Post (July 5, 2017, updated July 14, 2017) (https://nypost.com/2017/07/05/nypd-officer-shot-on-duty-in-critical-condition/).

[19] U.S. Dep't of Justice, Press Release, *Brooklyn Man Arrested for Using a Weapon of Mass Destruction* (Feb. 28, 2018) (https://www.justice.gov/usao-edny/pr/brooklyn-man-arrested-using-weapon-mass-destruction).

[20] Joe Marino *et al.*, *Machete Attack Suspect Trevor Brickford Targeted NYPD as "Enemy of the State": Sources*, N.Y. Post (Jan. 1, 2023, updated Jan. 2, 2023) (https://nypost.com/2023/01/01/suspect-in-machete-attack-on-nypd-targeted-cops-as-enemy-of-the-state-sources/).

with officer photographs, could be used with other publicly-available information to easily identify the home addresses and identities of family members of police officers. As one citizen stated in testimony before the New York Senate: "You name a police officer to me right now, and I will find their address, their phone number, and their relatives. I will find them all through Google."[21]

95.     The safety concern for police officers is exacerbated by the nature of the inflammatory Stigmatizing Unsubstantiated Complaints at issue in this case, where individuals may seek vengeance for perceived sexual misconduct, racial bias/profiling, or false official statements, simply based on such an egregious and stigmatizing accusation being publicized (often with a misleading disposition such as "Unable to Determine"), notwithstanding that the accusation was false or meritless.

96.     Officers have no ability to prevent or mitigate the reputational and employment damage and danger to their safety from CCRB's publication of Stigmatizing Unsubstantiated Complaints. There is nothing they can do to prevent false and meritless complaints with inflammatory accusations from being filed with CCRB. Nor does the City do anything to curb this enormous problem. Officers also have no meaningful opportunity to defend themselves from Stigmatizing Unsubstantiated Complaints during or after the CCRB process, especially in the thousands of cases each year that CCRB closes without completing (or conducting) an investigation. Nor are they given notice or an ability to object before disclosure in response to a FOIL request to CCRB. And CCRB's vague case dispositions for Stigmatizing Unsubstantiated Complaints do not clearly exonerate the officers, instead misleadingly portraying that the matter

---

[21] Testimony, Senate Standing Committee on Codes Public Hearing (Oct. 24, 2019) (https://www.nysenate.gov/calendar/public_hearings/october-24-2019/public-hearing-policing-s3695-repeals-provisions-0), at 2:56:35.

was not fully investigated and that the accusation remains viable, such as "Unable to Determine" and "Complainant Unavailable."

97.     Yet, as set forth below, under CCRB's new indiscriminate disclosure policy, CCRB disseminates all Stigmatizing Unsubstantiated Complaints in response to FOIL requests without individualized review or redaction, for upload to a public, searchable, perpetual online database, and without regard for the complaint's lack of veracity, absence of evidence, or entirely fabricated nature.

***CCRB Acknowledges the Extreme Prejudice to Officers from Publication of Stigmatizing Unsubstantiated Complaints, Yet is Knowingly Facilitating the Maintenance of a Public Database with Such Information, Inconsistent with CCRB's Internal Policies***

98.     CCRB itself acknowledges that Stigmatizing Unsubstantiated Complaints constitute special categories of unsubstantiated complaints that, if disclosed with officer identifying information, are very prejudicial to police officers.

99.     As such, CCRB maintains a policy for its own officer complaint database that carves out Stigmatizing Unsubstantiated Complaints as a special category of unsubstantiated complaints that are not publicly disclosed with officer identifying information.

100.    However, inconsistent with CCRB's own recognition that the public disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information is very prejudicial to police officers and therefore such unsubstantiated complaints warrant confidential treatment, CCRB is simultaneously disseminating Stigmatizing Unsubstantiated Complaints with officer identifying information to be uploaded and permanently displayed and searchable in a third-party public internet database, called 50-a.org.

28

101.    In particular, CCRB maintains its own public internet database with officer CCRB complaint histories, called "CCRB NYPD Member of Service Histories" (https://www.nyc.gov/site/ccrb/policy/MOS-records.page) ("CCRB Database").

102.    In its CCRB Database, CCRB does not disclose which officers were the subjects of which particular Stigmatizing Unsubstantiated Complaints. Rather, CCRB reports unsubstantiated allegations in these particularly stigmatizing categories as "Abuse of Authority: Other."

103.    CCRB's policy of not publicly disclosing which officers were the subjects of which particular Stigmatizing Unsubstantiated Complaints in its CCRB Database is expressly set forth in the CCRB Database, which states:

> Note: 1) "Offensive Language" allegations that are not substantiated are reported as "Offensive Language: Other"; 2) "Untruthful Statement" allegations that are not substantiated are reported "Abuse of Authority: Other"; 3) "Bias-Based Policing" allegations that are not substantiated are reported as "Abuse of Authority: Other"; 4) "Racial Profiling" allegations that are not substantiated are reported as "Abuse of Authority: Other"; 5) "Sexual Misconduct" allegations that are not substantiated are reported as "Abuse of Authority: Other."

104.    CCRB's Executive Director, Jonathan Darche, speaking on behalf of the agency, expressly acknowledged that CCRB's policy of designating Stigmatizing Unsubstantiated Complaints as "Abuse of Authority: Other" for purposes of CCRB's Database is because these categories of unsubstantiated complaints, if publicly disclosed, are particularly prejudicial to officers.

105.    At CCRB's monthly public Board meeting on October 22, 2025, Mr. Darche stated in reference to CCRB's use of the "Abuse of Authority: Other" designation for Stigmatizing Unsubstantiated Complaints: "How the Agency [CCRB] characterizes certain

29

allegation types, that could be very prejudicial to a person when they're not substantiated is why that is listed as abuse."[22]

106.    Mr. Darche continued in reference to CCRB's policy of disclosing Stigmatizing Unsubstantiated Complaints as "Abuse of Authority: Other" for purposes of CCRB's Database: "It was merely done, for certain, for that allegation type, because it is very prejudicial to the character of the officer."[23]

107.    Mr. Darche further clarified that the three categories of unsubstantiated allegations subject to CCRB's policy of disclosing them as "Abuse of Authority: Other" for purposes of CCRB's Database are "[u]ntruthful statement," "[s]exual misconduct," and "[r]acial profiling," stating that "those are the three very prejudicial to someone's character."[24]

108.    Inconsistent with CCRB's recognition of the highly prejudicial effects of the public disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information and its own policy not to do so for the CCRB Database, CCRB recently announced and maintains a blanket policy that if it receives a FOIL request for Stigmatizing Unsubstantiated Complaints, it discloses the Stigmatizing Unsubstantiated Complaints with officer identifying information.

109.    At the October 22, 2025, Board meeting, Mr. Darche, speaking on behalf of the agency, stated that if CCRB receives a FOIL request for Stigmatizing Unsubstantiated Complaints, "we do not change the characterization."[25]

---

[22] CCRB, Public Meeting Tr. (Oct. 22, 2025), at 21:24-22:3 (https://www.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/board/2025/minutes/20251022-boardmtg-minutes.pdf).

[23] *Id.* at 22:8-11.

[24] *Id.* at 22:25-23:12.

[25] *Id.* at 22:12-13.

110.    As part of CCRB's blanket policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests, CCRB has in fact been disclosing, and continues to disclose, Stigmatizing Unsubstantiated Complaints with officer identifying information for a large number of police officers.

111.    In doing so, CCRB is knowingly facilitating the uploading of such Stigmatizing Unsubstantiated Complaint with officer identifying information to the 50-a Database, a third-party, public, searchable online database (https://www.50-a.org/).

112.    The 50-a Database is a searchable website of NYPD officer complaint history operated by a third party.

113.    CCRB knows that information that it discloses in response to FOIL requests is uploaded to the 50-a Database.

114.    At CCRB's monthly Board meeting on March 12, 2025, Mr. Darche, speaking on behalf of the agency, acknowledged, in specific reference to the 50-a Database, that as to information that CCRB provides in response to FOIL requests, the recipient(s) "then post that online."[26]

115.    As such, CCRB knows that, when it discloses Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests, such Stigmatizing Unsubstantiated Complaints with officer identifying information are being uploaded, and will continue to be uploaded, to the 50-a Database, where they are publicly available and searchable in perpetuity.

---

[26] CCRB, Public Meeting Tr. (Mar. 12, 2025), at 50:7-11
(https://www.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/board/2025/minutes/20250312-
boardmtg-minutes.pdf).

116.    Ever since CCRB announced its policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests, such Stigmatizing Unsubstantiated Complaints with officer identifying information disclosed by CCRB have in fact been, and continue to be, uploaded to the 50-a Database for a large number of police officers.

117.    The 50-a Database also includes photographs of the subject officers.

118.    Examples of such disclosures of Stigmatizing Unsubstantiated Complaints with officer identifying information (including officer photographs) publicized on the 50-a Database include the following:

119.    For one officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
|---|---|---|
| Abuse of Authority: Sexual Miscon (Rape) | Female, 40-44 | Unable to Determine |

120.    For another officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
|---|---|---|
| Abuse of Authority: Sex Miscon (Sexually Motivated Search) | Male, 30-34 | Unable to Determine |

121.    For another officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
|---|---|---|
| Abuse of Authority: Sexual Miscon (Forcible Touching) | Female, 35-39 | Complainant Uncooperative |

32

122.   For another officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Sexual Miscon (Sexual Assault) | Male, 25-29 | Alleged Victim Uncooperative |

123.   For another officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Sexual Miscon (Rape) | Female, 35-39 | Complainant Unavailable |

124.   For another officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Sexual Miscon (Penetrative Sex. Contact) | Male, 45-49 | Unfounded |

125.   For another officer identified in the 50-a Database, the 50-a Database discloses the following Stigmatizing Unsubstantiated Complaint:

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Sexual Miscon (Forcible Touching) | Female, 65-69 | Unfounded |

126.   The foregoing is a small sample of many instances of Stigmatizing Unsubstantiated Complaints with officer identifying information (including officer photographs) that appear in the 50-a Database. Additional Stigmatizing Unsubstantiated Complaints with officer identifying information are continuing to be published in the 50-a Database as CCRB continues to disclose such information on an ongoing basis.

33

127.    CCRB's disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information for upload to the 50-a Database is highly damaging to the reputations, safety, and employment prospects of the subject officers and violates their rights.

128.    Once uploaded to the 50-a Database, the Stigmatizing Unsubstantiated Complaints with officer identifying information (including photographs) are available to current and future employers, individuals seeking to harass or retaliate against officers, and anybody with a computer. Moreover, the Stigmatizing Unsubstantiated Complaints with officer identifying information, once disclosed by CCRB, are maintained and searchable on the 50-a Database forever.

129.    CCRB's blanket policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information also violates officers' privacy and safety rights that are protected by FOIL.

130.    By maintaining a blanket policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests, CCRB is failing to conduct the individualized review and redaction process required by FOIL. As the Court of Appeals held in *N.Y. Civ. Liberties Union*, 43 N.Y.3d at 550, FOIL "requires an agency to evaluate each record individually," and "[w]here redactions would prevent such an invasion [of privacy] and can be made without unreasonable difficulty, the agency must disclose the record with those necessary redactions."

131.    CCRB has failed and is continuing to fail to conduct an individualized review of Stigmatizing Unsubstantiated Complaints when they are requested under FOIL and to redact officer identifying information to protect officers' due process rights and privacy and safety rights, notwithstanding that CCRB expressly acknowledges the heightened prejudice to officers

34

from the public disclosure of such Stigmatizing Unsubstantiated Complaints with officer identifying information.

***The Relief of Redaction or Neutral Categorization for Stigmatizing Unsubstantiated Complaints Would Be Consistent with, or In Fact Afford Narrower Relief Than, the Treatment of Like Public Employees and Professionals***

132.    As set forth above, CCRB itself acknowledges that the limited, inflammatory categories of Stigmatizing Unsubstantiated Complaints should not be published with officer identifying information because such unsubstantiated allegations are "very prejudicial to the character of the officer."[27] It was inconsistent, arbitrary, and irrational for CCRB to then turn around and adopt a blanket policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests, knowing that such information, once disclosed by CCRB, is uploaded to another public database – the 50-a Database.

133.    CCRB's disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information provides less protection to police officers – who face heightened safety concerns and where public perception of reputation and character are crucial to be able to do their jobs effectively – than other licensed professionals in New York receive. In New York's online misconduct database for state-licensed professionals, the database only includes those allegations that result in an adverse disciplinary action against the professional.[28] State-licensed professionals who enjoy confidentiality for unsubstantiated complaints in the state's online database include professions that hold a position of trust and on which the community relies for

---

[27] CCRB, Public Meeting Tr. (Oct. 22, 2025), at 22:10-11 (https://www.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/board/2025/minutes/20251022-boardmtg-minutes.pdf).

[28] N.Y. State Educ. Dep't, Office of the Professions, *Frequently Asked Questions – Enforcement* (https://www.op.nysed.gov/enforcement/frequently-asked-questions) (stating with respect to the online database, "Complaints are accusations of professional misconduct; those that do not result in disciplinary action are confidential.").

their ethics, care, and professionalism – and in sensitive areas such health, finances, and safety – such as, among others: architects, accountants, dentists, engineers, mental health practitioners, and nurses.[29] CCRB's policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information for upload to the 50-a Database constitutes extremely harsh, unfair, and prejudicial treatment for the men and women who risk their lives each day to serve the residents, visitors and businesses of this City.

134.     Tenured teachers in New York – who are entrusted with the vulnerable population of children and often in a private setting – are afforded blanket confidentiality over disciplinary charges of which they have been acquitted, and such unsubstantiated charges are expunged from their employment records. *See* Educ. Law §3020-a(4)(b); *see also LaRocca*, 220 A.D.2d at 430 (concurrence in part) (stating that Educ. Law §3020-a preserves confidentiality "as to those charges of which the educator has been acquitted" and such charges "must be expunged from the employment record"). Similarly, for judges in New York, unsubstantiated disciplinary records are confidential. Only disciplinary records that are substantiated after a hearing are made public. *See* Judiciary Law §§44(7), 45(1); *see also Nicholson v. State Comm'n on Judicial Conduct*, 72 A.D.2d 48, 55 (1st Dep't 1979) (stating that Judiciary Law allows disclosure "after a hearing pursuant to service of a formal written complaint results in a written determination by the Commission that a Judge be admonished, censured, removed or retired"). As such, the Commission on Judicial Conduct's public disciplinary database only includes matters that resulted in admonition, censure, resignation/retirement, or removal.[30]

---

[29] N.Y. State Educ. Dep't, Office of the Professions, *N.Y. State Licensed Professions* (https://www.op.nysed.gov/professions-index).

[30] https://www.cjc.ny.gov/Determinations/DeterminationDatabase.html#gsc.tab=0

135.    The relief sought in this case is far narrower than that afforded to licensed professionals and public employees entrusted with the community's health, safety, finances, and vulnerable populations. Whereas unsubstantiated complaints are categorically withheld for licensed professionals, teachers, and judges, Plaintiffs here are not asking for categorical withholding. Rather, Plaintiffs seek only redaction of officer identifying information, and only for three categories of Stigmatizing Unsubstantiated Complaints (or, alternatively, neutral characterization of such Stigmatizing Unsubstantiated Complaints), to prevent unnecessary and unwarranted prejudice and damage to the reputations, employment prospects, and safety of police officers and to protect their due process rights.

136.    Upon information and belief, such relief of redacting police officer identifying information from similar types of inflammatory unsubstantiated complaints is employed in other jurisdictions. *See, e.g.*, *Bainbridge Is. Police Guild v. City of Puyallup*, 172 Wash. 2d 398, 415 (Wash. 2011) (in connection with public records request for records concerning unsubstantiated sexual misconduct complaint against police officer, holding that records should be produced but officer identity must be redacted; "We hold that revealing [officer's] identity in connection with [complainant's] unsubstantiated allegation of sexual misconduct is highly offensive to a reasonable person."); *Haber v. Evans*, 268 F. Supp. 2d 507, 513 (E.D. Pa. 2003) (holding that good cause existed for redaction of investigative reports pertaining to allegations of sexual misconduct as to identities of "any accused officer who was cleared of wrongdoing by virtue of a withdrawn complaint or a determination that the charges were unfounded or not sustained").

**FIRST CAUSE OF ACTION**

**(Violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. §1983, and of Article I, §6 of the New York Constitution)**

137.    Plaintiffs incorporate by reference the allegations set forth in all of the preceding paragraphs of this Complaint as if fully set forth herein.

138.    Inconsistent with its policy relating to its own CCRB Database that acknowledges that Stigmatizing Unsubstantiated Complaints warrant confidential treatment because of their "very prejudicial" effects on police officers, CCRB has disclosed, and has a policy of continuing to disclose, Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests.

139.    CCRB knows that Stigmatizing Unsubstantiated Complaints with officer identifying information that it has disclosed are uploaded to and published on the 50-a Database, where the defamatory accusations are publicly available, searchable, and posted in perpetuity. CCRB also knows that Stigmatizing Unsubstantiated Complaints with officer identifying information that it discloses in the future, unless enjoined from doing so, will likewise be uploaded to and published on the 50-a Database.

140.    CCRB discloses Stigmatizing Unsubstantiated Complaints without regard for the lack of veracity of such accusations, without regard for whether such accusations lack any evidentiary support at all or are entirely fabricated, and even in cases where CCRB does not even complete or conduct an investigation (such as where the complainant is uncooperative).

141.    Stigmatizing Unsubstantiated Complaints with officer identifying information that CCRB has disclosed have involved false and meritless accusations against officers. Stigmatizing Unsubstantiated Complaints with officer identifying information that CCRB will disclose in the

38

future, unless enjoined, will likewise involve false and meritless accusations against officers given the enormous number of false, meritless, and otherwise unsubstantiated complaints that are filed with CCRB year after year and the lack of any accountability or safeguards to prevent or mitigate such false, meritless, and otherwise unsubstantiated complaints from continuing to be filed with CCRB.

142.    CCRB announced and maintains a blanket policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests, and thus, by virtue of CCRB's announced policy, CCRB does not evaluate and, unless enjoined, will not evaluate, the individual complaints for due process, privacy, or safety concerns before it disseminates them.

143.    Police officers have a protected liberty interest in seeking and maintaining employment opportunities free from the specter of Stigmatizing Unsubstantiated Complaints, which CCRB has disclosed and has a policy of continuing to disclose for upload to the 50-a Database.

144.    CCRB's disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information, and its policy of continuing to do so in the future, violates the Due Process Clauses of the U.S. and New York Constitutions because it has deprived, and will continue to deprive, police officers of liberty interests without adequate process.

145.    CCRB's disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information, and its policy of continuing to do so in the future, constitutes the publication of false and meritless accusations against police officers – which accusations are of a particularly inflammatory, stigmatizing, damaging, and in some cases, criminal, nature – that call

39

into question their good name, reputation, honor, and integrity, imposing a permanent stigma upon such officers.

146. The stigma from such disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information is defamatory and extremely prejudicial and damaging to the subject officers because Stigmatizing Unsubstantiated Complaints constitute special categories of unsubstantiated complaints that go to the core of an individual's character and integrity, render an individual a pariah or someone that others feel unsafe or uncomfortable to associate with, and include serious criminal conduct such as rape, sexual assault, and perjury.

147. CCRB's disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information not only undisputedly damages officers' reputations – as CCRB itself acknowledges – but it also affects more tangible interests of the officers and alters their legal rights, thereby resulting in a loss of liberty protected by the Due Process Clauses of the U.S. and New York Constitutions.

148. CCRB has disclosed, and continues to disclose, Stigmatizing Unsubstantiated Complaints with officer identifying information for upload to the 50-a Database, where the information is maintained forever and searchable and viewable by current and prospective employers.

149. Many NYPD police officers seek to hold additional employment in conjunction with their public employment, such as working in private security or corporate security. And, when police officers leave employment with the NYPD, many seek jobs in other law enforcement departments or in private employment. However, officers who have Stigmatizing Unsubstantiated Complaints with officer identifying information disclosed by CCRB and

uploaded to the 50-a Database – such as accusations of rape or sexual assault – are at risk of becoming virtually unemployable in the eyes of employers.

150.    The damage to reputation and employment opportunities is exacerbated because CCRB's dispositions do not meaningfully clear the officers of the false and meritless accusations. CCRB uses and discloses ambiguous and misleading dispositions for Stigmatizing Unsubstantiated Complaints such as "Unable to Determine," which gives the false impression that the investigation was not completed, when in fact all relevant evidence was presented and considered and the complainant was unable to meet his or her burden of proof by a preponderance of the evidence.

151.    CCRB's case dispositions for truncated investigations such as "Complainant Unavailable" also do nothing to clear the subject officer's name. CCRB is publicizing false accusations of such extreme misconduct as rape and sexual assault against innocent officers while simultaneously indicating that the matter was not investigated. There is no valid purpose served by the publication of such extreme disparaging and life-altering accusations against officers, together with officer identifying information, when CCRB did not even complete an investigation of the matter to ascertain whether the accusation was supported by evidence or completely made up.

152.    Indeed, whereas CCRB previously used case dispositions of "Unsubstantiated" or "Exonerated" for categories of unsubstantiated complaints, at least allowing officers to point to a clear disposition that the complaint was closed with an adjudication in favor of the officer, following CCRB's unilateral rule change effective in February 2023, CCRB abandoned the "Unsubstantiated" and "Exonerated" dispositions and replaced them with ambiguous, prejudicial dispositions that do not provide a clear exoneration for the subject officer.

41

153.    CCRB has easy, straightforward solutions available to it to protect the reputations, safety, employment prospects, and rights of police officers when it receives FOIL requests for Stigmatizing Unsubstantiated Complaints.

154.    CCRB could disclose Stigmatizing Unsubstantiated Complaints with redactions of officer identifying information. This solution would provide the public with data regarding the numbers of Stigmatizing Unsubstantiated Complaints that are made and the outcomes of those complaints, while balancing protection of the reputations, safety, employment prospects, and rights of police officers against accusations that CCRB itself acknowledges are "very prejudicial to the character of the officer."[31]

155.    The burden on CCRB to redact officer identifying information from Stigmatizing Unsubstantiated Complaints would be minimal, and such individualized review and redaction already is required by FOIL. *See N.Y. Civ. Liberties Union*, 43 N.Y.3d at 550.

156.    Alternatively, CCRB could disclose Stigmatizing Unsubstantiated Complaints as "Abuse of Authority: Other." CCRB already follows this practice when it publishes Stigmatizing Unsubstantiated Complaints in its own CCRB Database, confirming that this is a feasible, practical solution.

157.    The damage to police officers from the disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information greatly outweighs any negligible interest, if any, in associating officer identities to such unsubstantiated complaints. The law recognizes the lack of probative value of unsubstantiated complaints against law enforcement, and that redaction of identifying information is warranted. *See Marcel v. City of*

---

[31] CCRB, Public Meeting Tr. (Oct. 22, 2025), at 22:10-11 (https://www.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/board/2025/minutes/20251022-boardmtg-minutes.pdf).

*N.Y.*, No. 88 CIV. 7017, 1990 WL 47689, at *9 (S.D.N.Y. Apr. 11, 1990) ("Unsubstantiated CCRB reports do not demonstrate a breach of a municipality's duty to train or supervise its police."); *Law v. Cullen*, 613 F. Supp. 259, 262 (S.D.N.Y. 1985) ("[i]n the absence of any substantiated charges of abuse, there is no basis for plaintiff's claim that [officer] had a 'propensity' to use excessive force"); *People v. Perez*, 73 Misc. 3d 171, 185 (Sup. Ct. Queens Co. 2021) (unsubstantiated complaints against officers were not discoverable by criminal defendant; "A determination that there is insufficient evidence to establish that something happened does not support a reasonable basis to believe that it did."); *see also* ¶¶81-82 *supra*.

158.    By failing to redact officer identifying information or neutralize the accusation before disseminating Stigmatizing Unsubstantiated Complaints, CCRB's procedures fail to protect the subject officers from an improper deprivation of their liberty interests.

159.    CCRB does not provide notice to the subject officers or an opportunity to be heard before Stigmatizing Unsubstantiated Complaints with officer identifying information are disclosed by CCRB or uploaded to the 50-a Database. CCRB does not give the subject officers notice when it receives a FOIL request for Stigmatizing Unsubstantiated Complaints or produces information about the subject officer in response to such request.

160.    There is no mechanism for officers to have their identifying information or allegations against them removed from the 50-a Database.

161.    Moreover, CCRB's practice of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information fails to afford officers any process to clear their names or protect themselves against the public disclosure of such false accusations.

162.    Because Stigmatizing Unsubstantiated Complaints are, by definition, complaints that are not substantiated, officers are never afforded a trial or hearing on such complaints to

cross-examine accusers and witnesses and otherwise defend themselves. Only complaints that CCRB substantiates with a recommendation of charges and specifications afford the subject officer a right to an administrative trial.

163.    Indeed, for thousands of Stigmatizing Unsubstantiated Complaints, such as where the complainant is unavailable or uncooperative, CCRB does not even complete an investigation, and thus the officer has no ability to be heard whatsoever. Yet, CCRB still discloses the Stigmatizing Unsubstantiated Complaint with officer identifying information for upload to the 50-a Database, without any regard for lack of veracity or lack of evidence.

164.    The officer also has no ability to clear his or her name after CCRB discloses Stigmatizing Unsubstantiated Complaints with officer identifying information. CCRB has already closed the complaint, sometimes without even completing an investigation. Yet, the Stigmatizing Unsubstantiated Complaints are produced and uploaded to the 50-a Database where they exist in perpetuity and are available to current and prospective employers and the public at large, with no process for the officer to clear his or her name from the false accusation or to remove or take down the information from the 50-a database.

165.    When CCRB disseminates Stigmatizing Unsubstantiated Complaints with officer identifying information, it is republishing false and defamatory allegations against officers. Indeed, the categories of Stigmatizing Unsubstantiated Complaints at issue in this case involve serious criminal conduct that is defamatory *per se*. Under blackletter law, when CCRB republishes that false allegation by publicly disseminating it without redacting officer identifying information, it, too, commits defamation, because "it is widely recognized that one who republishes a libel is subject to liability just as if he had published it originally." *Goldman v. Reddington*, 417 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (internal quotes omitted). Thus, as

CCRB does when it disseminates Stigmatizing Unsubstantiated Complaints that include false allegations of such serious misconduct as rape, CCRB "is repeat[ing] allegedly false accusations of rape," and is therefore liable for the falsity of that statement, even though it did not author the statement in the first place, "[b]ecause those who repeat another's defamatory statements are not sheltered from liability." *Id.* at 176.

166.    Nor is CCRB excused from liability for republishing such false, inflammatory allegations of rape, sexual assault, and other serious misconduct against police officers simply by including case dispositions such as "Unable to Determine" or "Complainant Unavailable." A person or entity cannot evade liability for publishing or republishing extremely damaging false statements about an individual simply because the false statement is accompanied by an assertion that the speaker was "unable to determine" the accusation or that the speaker did not fully investigate the accusation. To the contrary, as the U.S. Supreme Court has held, "society has a pervasive and strong interest in preventing and redressing attacks upon reputation," and "[t]he right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being – a concept at the root of any decent system of ordered liberty." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (internal brackets and quotes omitted). As such, the Court held that couching a false statement with qualifying language such as "I think" or "in my opinion" does not allow the speaker to evade liability for "imply[ing] a false assertion of fact." *Id.* at 19. Just as in *Milkovich*, CCRB's policy of disseminating Stigmatizing Unsubstantiated Complaints such as rape, sexual assault, and other serious misconduct with dispositions such as "Unable to Determine," "Complainant Uncooperative," or "Complainant Unavailable" can cause as much damage to reputation and employment prospects as the accusation alone. Moreover,

45

CCRB's republication of the false allegation does not somehow become "true" simply because CCRB includes a statement that it was unable to determine or unable to investigate the allegation. Otherwise, due process and the law of defamation would have no teeth, because an individual could always get away with disseminating extremely damaging allegations about others simply by couching those allegations with a vague caveat that they have not completed a full investigation.

167.    CCRB does not require that any standard of proof be met by the complainant before CCRB disseminates Stigmatizing Unsubstantiated Complaints with officer identifying information. And officers have no ability to protect themselves against false and meritless complaints being filed with CCRB simply for doing their jobs.

168.    CCRB allows anybody, from anywhere in the City, state, country, or world, to submit a complaint against an NYPD officer with CCRB via telephone, computer, or mail. CCRB does not require complaints to be sworn.

169.    Under CCRB's rules, an individual need not even have first-hand knowledge of an incident to submit a complaint to CCRB.

170.    The City does not impose any repercussion or consequence on an individual for making a false or meritless complaint against an officer to CCRB.

171.    An enormous volume of complaints filed with CCRB year after year are false, meritless, or otherwise not substantiated, affecting the careers and lives of thousands of officers every year.

172.    By virtue of the fact that a Stigmatizing Unsubstantiated Complaint was made against an officer, even when entirely fabricated or not supported by a scintilla of evidence, or even when wholly contradicted by the evidence, CCRB, unless enjoined, nevertheless will

46

disclose the Stigmatizing Unsubstantiated Complaint with officer identifying information for upload to the 50-a Database.

173.    CCRB's knowing disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information for upload to the 50-a Database also violates a liberty interest of police officers protected by the Due Process Clauses of the U.S. and New York Constitutions because, under the law, stigma-plus exists where such false accusations are maintained in a public database. *See Lee TT v. Dowling*, 87 N.Y.2d 699 (1996); *Miller v. DeBuono*, 90 N.Y.2d 783 (1997); *People v. David W.*, 95 N.Y.2d 130 (2000); *Bursac v. Suozzi*, 22 Misc. 3d 328 (Nassau Co. 2008); *see also U.S. Dep't of Justice*, 489 U.S. at 764 ("Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information.").

174.    Once Stigmatizing Unsubstantiated Complaints with officer identifying information are uploaded to the 50-a Database, such false and meritless accusations are available not only to current and prospective employers, but credit agencies, landlords, educational institutions, banks, and the public at large, for the officers' lifetimes and beyond.

175.    Because Stigmatizing Unsubstantiated Complaints are being uploaded, with CCRB's knowledge, to the 50-a Database, rendering the false accusations so broadly disseminated and searchable, and available forever on the internet, the disclosure causes greater damage to employment prospects and other aspects of officers' lives and safety than if the information existed only within the walls of CCRB.

176.    Particularly given that police officers have no ability to remove their identifying information or allegations against them from the 50-a Database once such information is

47

published there, and information in the 50-a Database will remain publicly available forever, officers face imminent and irreparable harm from CCRB's policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information. CCRB's disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information for upload to the 50-a Database defames and threatens the safety of officers with limitless reach and in perpetuity.

177.    CCRB's disclosure, and ongoing practice of disclosing, Stigmatizing Unsubstantiated Complaints with officer identifying information violates officers' due process rights under the U.S. and New York Constitutions.

178.    Defendants, as a municipal agency and the agency's Interim Chair and Executive Director, acting in their capacities as such, have taken all of the actions, made all of the decisions, and promulgated and maintained all of the policies addressed herein under color of law, and in doing so have deprived, and will deprive, police officers of their rights while acting under color of law.

179.    Accordingly, the Court should enjoin and prohibit Defendants from continuing to violate police officers' due process rights under the U.S. and New York Constitutions through the disclosure of Stigmatizing Unsubstantiated Complaints with officer identifying information and grant the further relief requested herein.

## SECOND CAUSE OF ACTION

### (Request for Declaratory Relief under 28 U.S.C. §2201)

180.    Plaintiffs incorporate by reference the allegations set forth in all of the preceding paragraphs of this Complaint as if fully set forth herein.

181.    There is a ripe, justiciable controversy between the parties as to the constitutionality of CCRB's disclosure, and ongoing practice of disclosing, Stigmatizing Unsubstantiated Complaints with officer identifying information.

182.    Absent declaratory relief from the Court, the dispute between Plaintiffs and Defendants regarding such disclosures is capable of, and will be, recurring, because CCRB announced and maintains a policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information in response to FOIL requests.

183.    For reasons set forth above, which are incorporated by reference herein, CCRB's disclosure, and ongoing policy of disclosing, Stigmatizing Unsubstantiated Complaint with officer identifying information violates the due process rights of police officers under the U.S. and New York Constitutions.

184.    Accordingly, the Court should issue a declaratory judgment declaring that CCRB's disclosure, and ongoing policy of disclosing, Stigmatizing Unsubstantiated Complaints with officer identifying information violates the due process rights of police officers under the U.S. and New York Constitutions.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court enter an Order and Judgment:

(a)    Declaring that CCRB's past disclosures of Stigmatizing Unsubstantiated Complaints with officer identifying information violated the Due Process Clauses of the U.S. and New York Constitutions;

(b)    Declaring that CCRB's ongoing policy of disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information violates the Due Process Clauses of the U.S. and New York Constitutions;

49

(c)     Granting a temporary, preliminary, and permanent injunction enjoining and prohibiting CCRB from disclosing Stigmatizing Unsubstantiated Complaints with officer identifying information;

(d)     Ordering that, to the extent CCRB discloses Stigmatizing Unsubstantiated Complaints, it must redact any officer identifying information or, alternatively, neutralize the accusation (such as through the use of "Abuse of Authority: Other");

(e)     Ordering in the alternative that, to the extent CCRB were to disclose Stigmatizing Unsubstantiated Complaints with officer identifying information, officers must be afforded reasonable and fair notice and a name-clearing hearing on the merits before any such disclosure is made or, in the alternative, CCRB must give the subject officers reasonable and fair notice and an opportunity to object and seek legal relief before any such disclosure is made;

(f)     Awarding Plaintiffs' costs and attorneys' fees, including, without limitation, pursuant to 42 U.S.C. §1988; and/or

(g)     Granting such other and further relief as the Court deems just and proper.

50

Dated: New York, New York
       April 21, 2026

Respectfully submitted,

SPENCER FANE LLP

By: ___*/s/Matthew C. Daly*_____
       Matthew C. Daly

711 Third Avenue
New York, New York 10017
(212) 907-7300
mdaly@spencerfane.com

*Of counsel:*

Frederick W. Vasselman
Office of the General Counsel of the Police
Benevolent Association of the City of New York,
Inc.
125 Broad Street
New York, New York 10004
(212) 298-9100
fvasselman@nycpba.org

*Attorneys for Plaintiffs*

51

## JURY TRIAL DEMAND

Plaintiffs Police Benevolent Association of the City of New York, Inc. and its President,

Patrick Hendry, request a jury trial on all claims so triable.


Dated:  New York, New York
        April 21, 2026

                              Respectfully submitted,

                              SPENCER FANE LLP

                              By:    /s/Matthew C. Daly
                                     Matthew C. Daly

                              711 Third Avenue
                              New York, New York 10017
                              (212) 907-7300
                              mdaly@spencerfane.com

                              *Of counsel:*

                              Frederick W. Vasselman
                              Office of the General Counsel of the Police
                              Benevolent Association of the City of New York,
                              Inc.
                              125 Broad Street
                              New York, New York 10004
                              (212) 298-9100
                              fvasselman@nycpba.org


                              *Attorneys for Plaintiffs*