# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.; and PATRICK HENDRY, as President of the Police Benevolent Association of the City of New York, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NEW YORK; NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD; SHERENE CRAWFORD, in her official capacity as Interim Chair of the New York City Civilian Complaint Review Board; and JONATHAN DARCHE, in his official capacity as Executive Director of the New York City Civilian Complaint Review Board, <br><br> Defendants. | Case No. 1:26-cv-03243-VSB-KHP |

**[PROPOSED] BRIEF OF *AMICI CURIAE* NEW YORK CIVIL LIBERTIES UNION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

NEW YORK CIVIL LIBERTIES
UNION FOUNDATION

Thomas Munson
Molly K. Biklen
125 Broad Street, 19th Floor
New York, New York 10004
Tel: 212-607-3300
tmunson@nyclu.org

*Attorneys for Amicus Curiae*

Dated:  July 16, 2026
         New York, New York

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................................ii

INTRODUCTION ............................................................................................................... 1

INTERESTS OF *AMICUS CURIAE* ................................................................................ 2

ARGUMENT ...................................................................................................................... 4

    I.     THE PBA'S ALLEGATIONS CONFLICT WITH AND MISCHARACTERIZE NEW YORK'S OPEN RECORDS LAW. ................................................................................. 4

        a.    FOIL Grants the Public Maximum Access to Government Records. ........................... 4

        b.    FOIL's Text Explicitly Requires Disclosure of All CCRB Complaints. ........................ 6

        c.    The Personal Privacy Exemption, Which is Permissive But Not Mandatory, Does Not Require or Permit a Blanket Bar on the Release of CCRB Records Containing the Names of Officers Subject to Unsubstantiated Complaints. ....................................... 7

    II.    THE PBA CANNOT SUCCEED ON THEIR DUE PROCESS CLAIMS......................... 9

CONCLUSION.................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases** ...................................................................................................................Page(s)

*Bursac v. Suozzi*, 22 Misc. 3d 328 (N.Y. Sup. Ct. 2008)....................................................12

*Cap. Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562 (N.Y. 1986)........................4, 7, 8

*Cap. Newspapers, Div. of Hearst Corp. v. Whalen*, 69 N.Y.2d 246 (N.Y. 1987) ...........................5

*Cohane v. Nat'l Collegiate Athletic Ass'n*, 612 F. App'x 41 (2d Cir. 2015).................................11

*DiBlasio v. Novello*, 344 F.3d 292 (2d Cir. 2003) .............................................................10

*Filteau v. Prudenti*, 161 F. Supp. 3d 284 (S.D.N.Y. 2016) ..................................................10

*Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013)..........................................5

*Gould v. New York City Police Dep't*, 89 N.Y.2d 267 (N.Y. 1996) .......................................4, 8

*In re New York City Policing During Summer 2020 Demonstrations,* No. 20-CV-8924 (CM)(GWG), 2024 WL 476367 (S.D.N.Y. Feb. 7, 2024), *aff'd sub nom. New York v. De Blasio*, No. 24-1434, 2025 WL 857338 (2d Cir. Mar. 19, 2025) .......................................3

*Lee TT. v. Dowling*, 87 N.Y.2d 699 (N.Y. 1996) .............................................................11

*Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y. 2013)...........................................3

*Miller v. DeBuono*, 90 N.Y.2d 783 (N.Y. 1997) .............................................................11

*New York Civil Liberties Union v. City of Rochester*, 43 N.Y.3d 543 (N.Y. 2025) .............. *passim*

*Paul v. Davis*, 424 U.S. 693 (1976) ............................................................................10

*People v. David W.*, 95 N.Y.2d 130 (N.Y. 2000) ..........................................................10, 12

*Reclaim the Recs. v. New York State Dep't of Health*, 45 N.Y.3d 1 (N.Y. 2025)............................7

*Town of Aurora v. Vill. of E. Aurora*, 32 N.Y.3d 366 (N.Y. 2018)...........................................7

*Uniformed Fire Officers Ass'n v. De Blasio*, 846 F. App'x 25 (2d Cir. 2021)...................... *passim*

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) ....................................................... 10-11

*Westchester Rockland Newspapers, Inc. v. Kimball*, 50 N.Y.2d 575 (N.Y. 1980)..........................5

**Statutes, Rules and Regulations**

N.Y. Pub. Off. Law § 84 ........................................................................................................4

N.Y. Pub. Off. Law § 86 ........................................................................................................6

N.Y. Pub. Off. Law § 87 ......................................................................................................7, 8

N.Y. Pub. Off. Law § 89 ........................................................................................................6

**Other Authorities**

Maria Cramer, *N.Y.P.D. Searches Target Black and Latino Drivers, Lawsuit Says*, N.Y. TIMES (Jan. 28, 2026) ...............................................................................................................5

Simon McCormack and Jesse Barber, *Cop Out: Analyzing 20 Years of Records Proving NYPD Immunity*, N.Y. CIVIL LIBERTIES UNION (Dec. 13, 2021).......................................................3

**INTRODUCTION**

In the summer of 2020, the New York State legislature fully repealed its police-misconduct secrecy law, section 50-a of the New York Civil Rights Law, and amended the Freedom of Information Law ("FOIL") "to specifically address the disclosure of law enforcement disciplinary records." *New York Civil Liberties Union v. City of Rochester*, 43 N.Y.3d 543, 547 (N.Y. 2025). In the wake of New York's enactment of this landmark legislation, plaintiff the Police Benevolent Association of the City of New York, Inc. (the "PBA") and other unions sought to block the disclosure of disciplinary records containing unsubstantiated, unfounded, exonerated, or nonfinal allegations of misconduct. Their motion for a preliminary injunction to enjoin the disclosure of these records was denied, the Second Circuit affirmed the denial in *Uniformed Fire Officers Ass'n v. De Blasio*, 846 F. App'x 25 (2d Cir. 2021), and the case was subsequently voluntarily dismissed with prejudice. The PBA has now returned with a new case, raising the same due process claims challenging the disclosure of a specific set of unsubstantiated allegations of misconduct—those alleging: racial profiling and bias based policing; false statements; and sexual misconduct. In doing so, the PBA's complaint mischaracterizes New York's FOIL regime and recent decisions interpreting the scope of the FOIL amendments. This new attempt to block disclosure of disciplinary records fares no better than the previous one in *Uniformed Fire Officers Ass'n v. De Blasio*, and this Court should likewise reject the PBA's efforts to restrict public access to police disciplinary records.

*Amicus*, the New York Civil Liberties Union (the "NYCLU") frequently litigates disputes related to the disclosure of law enforcement misconduct records under FOIL and writes to provide context on the demands of New York's FOIL statutes and the inapplicability of any categorical statutory exemption to the at-issue allegations. In New York, FOIL's exemptions are narrowly interpreted to ensure maximum public access to government records. Courts have thus repeatedly

1

emphasized this presumption of open records. Disclosure of the at-issue records is also explicitly required under the 2020 revisions to FOIL. The statutory text is clear on this point, and binding caselaw from New York's highest court supports this straightforward reading of FOIL's commands. FOIL's text, recent court decisions interpreting the 2020 revisions to FOIL, and decades of precedent governing FOIL's exemptions conflict with the PBA's claims that these types of unsubstantiated records must be shielded from the public.

The NYCLU writes further to explain why the PBA's reliance on new types of misconduct allegations does not alter the determination made by the Second Circuit in the PBA's previous challenge. *See Uniformed Fire Officers Ass'n*, 846 F. App'x at 31. That this claim involves different categories of misconduct does not change the calculus. Each of the specific categories of allegations targeted by the PBA are of great public concern and are fundamental to the operating of a lawful police department. As the PBA has not plausibly alleged that "any officer will be deprived of a tangible interest or property right," *id*., due to the disclosure of these allegations pursuant to FOIL, the NYCLU respectfully submits that this case must be dismissed.

**INTERESTS OF *AMICUS CURIAE***

*Amicus curiae*, the NYCLU, is the New York State affiliate of the American Civil Liberties Union, is a not-for-profit, nonpartisan organization with more than 112,000 members and supporters. The NYCLU's mission is to advance civil rights and civil liberties as embodied in the United States Constitution, the New York State Constitution, and state and federal law so that all New Yorkers can live with dignity, liberty, justice, and equality. To that end, the NYCLU has long been involved in efforts to challenge and ultimately repeal section 50-a of the New York Civil Rights Law. The NYCLU has frequently litigated issues concerning the scope of New York's FOIL statutes and its application to police misconduct records. *See, e.g.*, *New York Civil Liberties Union v. City of Rochester*, 43 N.Y.3d 543 (N.Y. 2025) (holding that FOIL's personal privacy exemption

does not permit agencies to categorically withhold disciplinary records from unsubstantiated complaints against law enforcement officers); *Uniformed Fire Officers Ass'n*, 846 F. App'x 25 (2d Cir. 2021) (as amicus). In this District, the NYCLU has also litigated significant cases related to police misconduct. *See, e.g.*, *Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y. 2013) (granting preliminary injunction in challenge to widespread practice of unlawful stops and searches of individuals at private apartment buildings in New York City by police officers); *In re New York City Policing During Summer 2020 Demonstrations,* No. 20-CV-8924 (CM)(GWG), 2024 WL 476367 (S.D.N.Y. Feb. 7, 2024) (entering consent decree in NYCLU case challenging constitutionality of police response to racial justice protests)*, aff'd sub nom*. *New York v. De Blasio*, No. 24-1434, 2025 WL 857338 (2d Cir. Mar. 19, 2025).

As part of assessing the integrity and effectiveness of police accountability systems, the NYCLU has also long advocated for greater scrutiny of the high rates at which oversight agencies do not substantiate allegations of police misconduct. After the repeal of section 50-a, the NYCLU launched an effort to submit open-records requests for information related to police misconduct and disciplinary systems to shed light on how police departments police themselves and handle officer misconduct, beginning with the NYPD. The NYCLU analyzed a database of 180,700 unique misconduct complaints since 2000 involving 59,244 separate incidents and 35,435 active or former NYPD officers, finding very low rates of substantiation and that only two percent received some kind of discipline from the NYPD based on the complaints. *See*, *e.g.*, Simon McCormack and Jesse Barber, *Cop Out: Analyzing 20 Years of Records Proving NYPD Immunity*, N.Y. CIVIL LIBERTIES UNION (Dec. 13, 2021), https://www.nyclu.org/uploads/2021/12/nyclu-2021-ccrbdata-report.pdf.

3

Thus, the NYCLU brings expertise regarding FOIL, the repeal of section 50-a, and the proper framework for assessing the legality of the disclosure of public records in compliance with the state and federal constitutions.

**ARGUMENT**

**I.    THE PBA'S ALLEGATIONS CONFLICT WITH AND MISCHARACTERIZE NEW YORK'S OPEN RECORDS LAW.**

The plaintiffs' (collectively the "PBA") allegations mischaracterize FOIL's requirements for agency disclosure of police misconduct records and the applicable standard necessary to justify redactions of agency records. The PBA repeatedly asserts that the "individualized review and redaction [of officer names] already is required by FOIL." ECF Dkt. No. 1 ("Complaint") ¶ 155; *see also id*. ¶¶ 10, 129-31. This is incorrect as a matter of law. FOIL's text, purpose, and New York caselaw all dictate that the names of officers who are the subject of unsubstantiated complaints are presumptively available to the public. Likewise, individualized review is required to justify redactions pursuant to an exemption, not disclosure. The PBA's allegations distort the requirements of FOIL, pervert the impact of FOIL's exemptions, and ignore binding precedent governing these exact issues.

**a.    FOIL Grants the Public Maximum Access to Government Records.**

As a threshold manner, the PBA's allegations asserting redaction requirements under FOIL, *id*. ¶¶ 10, 129-31, 155, cannot be squared with well-settled FOIL principles regarding the statute's expansive scope and purpose. The New York Court of Appeals has explained that "[t]o promote open government and public accountability, the FOIL imposes a broad duty on government to make its records available to the public." *Gould v. New York City Police Dep't*, 89 N.Y.2d 267, 274 (N.Y. 1996) (citing N.Y. Pub. Off. Law § 84). Therefore, "all records of a public agency are presumptively open to public inspection." *Cap. Newspapers Div. of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 566 (N.Y. 1986).

To achieve these principles, "FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government." *Cap. Newspapers, Div. of Hearst Corp. v. Whalen*, 69 N.Y.2d 246, 252 (N.Y. 1987). And "in the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment." *Westchester Rockland Newspapers, Inc. v. Kimball*, 50 N.Y.2d 575, 580 (N.Y. 1980). The PBA's allegations fail to recognize these core aspects of FOIL that the New York Court of Appeals has repeatedly upheld.

These principles of "maximum access" and "public accountability" are especially relevant here, where the records at issue concern how a public agency handles serious disciplinary complaints against law enforcement officials. Public accountability requires access to information contained in disciplinary records for these three categories of allegations singled out by this case— racial profiling and bias-based policing; sexual misconduct; and false statements—because the public must have insight into how the government handles charges of misconduct that go to the heart of constitutional policing and legitimacy. Racial bias in policing in particular was a central concern in the repeal of section 50-a, and touches on core aspects of police conduct that demand public scrutiny. *See New York Civil Liberties Union*, 43 N.Y.3d at 547 ("[I]n the wake of the national outcry over the killing of George Floyd in Minnesota, and rising public concern that law enforcement agencies were not appropriately handling allegations of officer misconduct, the legislature repealed Civil Rights Law § 50-a and amended FOIL"); *see also Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (finding the city liable for illegal racial discrimination and profiling); Maria Cramer, *N.Y.P.D. Searches Target Black and Latino Drivers, Lawsuit Says*, N.Y. TIMES (Jan. 28, 2026), https://www.nytimes.com/2026/01/28/nyregion/nypd-lawsuit-traffic-stops-black-latino.html.

**b.  FOIL's Text Explicitly Requires Disclosure of All CCRB Complaints.**

The PBA incorrectly asserts that FOIL compels the CCRB to redact the names of officers named in certain unsubstantiated complaints. Complaint ¶¶ 10, 130-31, 155. This is incorrect. In fact, FOIL's text, as amended in 2020, now explicitly requires the disclosure of the name of an officer who was the subject of a disciplinary complaint without regard to its disposition. N.Y. Pub. Off. Law § 86 (6). The statute defines "[l]aw enforcement disciplinary records," as "any record created in furtherance of a law enforcement disciplinary proceeding, including, but not limited to: (a) the complaints, allegations, and charges against an employee; **(b) the name of the employee complained of or charged**; . . . (d) the disposition of any disciplinary proceeding." *Id.* (emphasis added). And as confirmed by the New York Court of Appeals, "[t]he definition [of law enforcement disciplinary records] imposes no limitation based on the outcome or disposition of such proceeding." *New York Civil Liberties Union v. City of Rochester*, 43 N.Y.3d 543, 549 (N.Y. 2025).

In 2020, New York did not simply repeal Section 50-a, it also amended FOIL directly. These amendments were significant, and they were not confined to N.Y. Pub. Off. Law § 86 (6). In addition to the above quoted § 86 (6), the Legislature amended FOIL's disclosure exemptions and redaction requirements in N.Y. Pub. Off. Law § 89. These amendments take no steps to shield from disclosure the names of officers who have been the subject of unsubstantiated complaints. As to "law enforcement disciplinary records" in particular, the Legislature provided that agencies "shall redact" certain information, including home addresses; personal telephone numbers; personal cell phone numbers; personal e-mail addresses; and social security numbers "prior to disclosing" the rest of the record, N.Y. Pub. Off. Law § 89 (2-b). Tellingly, this provision omits mention of officers' names. This omission confirms that there is no exemption from disclosure for the names of officers subject to unsubstantiated or unfounded complaints because "[w]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference

6

must be drawn that what is omitted or not included was intended to be omitted or excluded." *Reclaim the Recs. v. New York State Dep't of Health*, 45 N.Y.3d 1, 16 (N.Y. 2025) (quoting *Town of Aurora v. Vill. of E. Aurora*, 32 N.Y.3d 366, 372-73 (N.Y. 2018)). New York's FOIL statute thus makes a clear distinction between its proper application to disclose officers' names contained in disciplinary records and the mandated redaction of sensitive personal information.

The PBA's allegations ignore these unambiguous amendments to the provisions FOIL, which make clear that unsubstantiated files and officer names are law enforcement records subject to disclosure. The PBA instead attempts to paint the repeal of section 50-a as purely symbolic.

    c. **The Personal Privacy Exemption, Which is Permissive But Not Mandatory, Does Not Require or Permit a Blanket Bar on the Release of CCRB Records Containing the Names of Officers Subject to Unsubstantiated Complaints.**

The PBA repeatedly misstates the circumstances under which an agency must conduct individualized review of records. Complaint ¶¶ 71, 130-31, 155. In doing so, the Complaint confuses the burden that agencies must carry to justify withholding records as a threshold requirement to permit disclosure. This presentation is backwards. FOIL provides that "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency *may* deny access to records or portions thereof that" fall within one of the statutory exemptions. Public Officers Law § 87(2) (emphasis added). The statute thus places a burden on denial, not disclosure. In other words, even if the CCRB *could* uniformly invoke the privacy exemption (and for all the reasons stated *infra* it could not), *it need not*: "the language of the exemption provision contains permissive rather than mandatory language, and it is within the agency's discretion to disclose such records, with or without identifying details, if it so chooses." *Cap. Newspapers Div. of Hearst Corp.*, 67 N.Y.2d at 567.

Likewise, the PBA misstates the impact of *New York Civil Liberties Union v. Rochester*. In that case, the Court of Appeals held that agencies must conduct individualized reviews to justify

7

withholding records pursuant to the personal privacy exemption, not to justify disclosure. N.Y.S.3d at 550. The PBA ignores this holding and misapplies *New York Civil Liberties Union v. City of Rochester* to incorrectly assert that the case imposes burdens on disclosure. Complaint ¶¶ 71, 130-31, 155. But *New York Civil Liberties Union v. City of Rochester* is a case in which a local government sought to withhold unsubstantiated disciplinary records sought via FOIL. N.Y.S.3d at 547-48. Therefore, the procedures described there regarding responses to FOIL requests for unsubstantiated disciplinary records are those necessary to justify the withholding of records, not to justify production. *See id*. at 550.

The PBA also incorrectly asserts that the personal privacy exemption requires the redaction of all officer names from unsubstantiated complaints and misapplies *New York Civil Liberties Union v. City of Rochester* on this point too. Complaint ¶¶ 130-31, 155. FOIL, however, does not require *nor permit* categorical application of exemptions. Such "blanket exemptions for particular types of documents are inimical to FOIL's policy of open government." *Gould*, 89 N.Y.2d at 275; *see also* N.Y. Pub. Off. Law § 87 (2) ("[a] denial of access shall not be based solely on the category or type of such record"); *New York Civil Liberties Union*, 43 N.Y.3d at 550 (same). This standard thus requires that in response to any FOIL request where the CCRB seeks to withhold records, it must carry its burden to demonstrate that any withheld material "falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access." *Cap. Newspapers Div. of Hearst Corp.*, 67 N.Y.2d at 566. Accordingly, FOIL does not require the blanket anonymization of unsubstantiated complaints—to the contrary, the New York Court of Appeals squarely held that FOIL's personal privacy exemption does not "provide[] a basis for agencies to categorically withhold all disciplinary records relating to complaints against law enforcement officers that were not deemed substantiated." *New York Civil Liberties Union,*

8

N.Y.S.3d at 547.  The court emphasized again that "there is no categorical or blanket personal privacy exemption for records relating to complaints against law enforcement officers that are not deemed substantiated." *Id*. at 548. These clear holdings directly conflict with PBA's allegations that FOIL requires redactions of officers' names from unsubstantiated complaints. Complaint ¶¶ 10, 130-31, 155.

The Complaint's citations to statutory protections offered to other types of government employees are irrelevant. The PBA cites specific statutes that limit the release of certain disciplinary records for teachers and judges in New York State. Complaint ¶ 134. No such statute places limitations on the release of law enforcement disciplinary records, and the prior statute that did—section 50-a—was repealed, as explained *supra*. This distinction in New York law is for good reason. As explained by the Second Circuit in a previous challenge to the release of unsubstantiated disciplinary records, "the public has a stronger legitimate interest in the disciplinary records of law enforcement officers than in those of other public employees." *Uniformed Fire Officers Ass'n*, 846 F. App'x at 31.

## II.    THE PBA CANNOT SUCCEED ON THEIR DUE PROCESS CLAIMS.

The Due Process Clause and Article I, § 6 protects all people—including, critically, government employees—from certain government action that can damage them. But these important protections are not implicated in this case, which involves a government agency providing information regarding its handling of disciplinary complaints against government officials, and specifically police officers, who are authorized to use deadly force. Information that "the public has a stronger legitimate interest in." *Uniformed Fire Officers Ass'n*, 846 F. App'x at 31. And even so, the PBA's due process claims fail because they do not establish a liberty interest implicated by the CCRB's release to the public of disciplinary records regarding potential misconduct in the line of duty. This is not the first time that the PBA has challenged the release of

records related to unsubstantiated CCRB complaints. And as in *Uniformed Fire Officers Ass'n*, the PBA has failed to allege "that any officer will be deprived of a tangible interest or property right" as is required to prevail on a stigma plus due process claim. 846 F. App'x at 31.

Loss of reputation alone is insufficient to invoke the procedural protections of the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 702-12 (1976) (holding that interest in reputation alone, even where damaged by a public official, does not create a liberty or property deprivation); *see also People v. David W.*, 95 N.Y.2d 130, 137 (N.Y. 2000) (recognizing that under both the federal and New York State constitutions that a "stigma plus" claim must show that the alleged stigma is "coupled with some more 'tangible' interest that is affected or a legal right that is altered"). The PBA therefore attempts to invoke the doctrine of stigma-plus, in which courts have recognized a protected liberty interest in "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus)." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). The PBA contends that "Police officers have a protected liberty interest in seeking and maintaining employment opportunities free from the specter of Stigmatizing Unsubstantiated Complaints." Complaint ¶ 143. But Second Circuit precedent plainly forecloses that argument. *See Uniformed Fire Officers Ass'n*, 846 F. App'x at 31 (explaining that "[w]e have held that diminished future employment opportunities resulting from a damaged reputation, as opposed to some independent legal detriment, are not sufficient"); *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (same); *see also Filteau v. Prudenti*, 161 F. Supp. 3d 284, 295 (S.D.N.Y. 2016) (noting that "[u]nder settled doctrine," a plaintiff's "claim of diminished job prospects is insufficient to support a claim of injury to a protected liberty interest").

The PBA fails to allege any facts sufficient to identify a liberty interest necessary to succeed in its due process claim. The PBA asserts that officers and former officers named in unsubstantiated

complaints "are at risk of becoming virtually unemployable in the eyes of employers." Complaint ¶ 149. But they identify no law *requiring* employers to abstain from hiring officers named in the types of unsubstantiated complaints at issue in this lawsuit. And the Second Circuit has made clear that "the deleterious effects which flow directly from a sullied reputation," including even "the impact that defamation might have on job prospects," are insufficient to establish a protected liberty interest. *Valmonte*, 18 F.3d at 1001; *see also Cohane v. Nat'l Collegiate Athletic Ass'n*, 612 F. App'x 41, 44 (2d Cir. 2015) ("When . . . the loss of job prospects is merely a normal repercussion of a poor reputation, it cannot be the basis for a stigma-plus claim") (citing *Valmonte*, 18 F.3d at 1001) (internal quotation marks omitted).

The PBA's claim that the "CCRB's knowing disclosure" of the at-issue records "for upload to the 50-a Database also violates a liberty interest of police officers" because "stigma-plus exists where such false accusations are maintained in a public database" also lacks merit. Complaint ¶ 173. All three of the New York Court of Appeals cases cited in the Complaint involve public databases maintained by state entities and that carried concrete consequences. In *Lee TT. v. Dowling*, the court found that a statutory scheme that required childcare employers to check applicants against the state's central registry of suspected child abusers and, for employers who hired people on the registry, to inform the state "in writing their specific reasons for doing so" sufficient to trigger a protected interest. 87 N.Y.2d 699, 705, 709 (N.Y. 1996). The court determined this decision was consistent with the Second Circuit's interpretation of the federal constitution. *Id*. at 703. Likewise, in *Miller v. DeBuono*, the court found that a New York Department of Health regulation prohibiting nursing homes from employing nurse aides who had been entered into a state registry of nurse aides with findings of patient abuse implicated a protected liberty interest. 90 N.Y.2d 783, 794 (N.Y. 1997). The PBA does not make any allegations

11

that the state imposes any similar concrete employment restrictions or burdens on police officers based on their inclusion in the 50-a database similar to those discussed in *Lee TT* and *Miller*. And in *People v. David W.*, which involved a due process challenge to a state statute classifying and publicizing a private person on a sex-offender registry, the classification carried with it "affirmative obligations" to register every 90 days with local law enforcement and to "promptly advise of changes in address," as well as publication of a person's photograph, home address, and phone number. 95 N.Y.2d at 137-38. That case similarly provides no support for the PBA's contention that "stigma-plus exists where such false accusations are maintained in a public database," Complaint ¶ 173, maintained by a third party and carries no affirmative obligations or consequences on those included in the database. Finally, the Complaint cites a state trial court decision in which a county executive published someone's "name, 'mug shot' picture and identifying information" on to a "Wall of Shame" on the County's website for newsworthy press releases. *Bursac v. Suozzi*, 22 Misc. 3d 328, 329-30 (N.Y. Sup. Ct. 2008). The PBA alleges no similar government official with decision making authority publishing disciplinary records in this manner.

In short, both federal and state law confirm that the PBA has not alleged any facts sufficient to assert a due process claim. The PBA thus cannot compel the CCRB to shield these records from public scrutiny.

**CONCLUSION**

For the foregoing reasons, the NYCLU respectfully submits that this Court should dismiss the Complaint, with prejudice.

Dated: July 16, 2026
    New York, NY

12

Respectfully submitted,


NEW YORK CIVIL LIBERTIES UNION
 FOUNDATION

 */s/ Thomas Munson*
 THOMAS MUNSON
 MOLLY K. BIKLEN
 125 Broad Street, 19th Floor
 New York, N.Y. 10004
 Tel: (212) 607-3300
 tmunson@nyclu.org

 *Attorneys for Amicus Curiae*

13

**CERTIFICATION UNDER LOCAL CIVIL RULE 7.1(c)**

In accordance with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, promulgated pursuant to 28 U.S.C. § 2071 and Fed. R. Civ. P. 83, the undersigned certifies that the word count in this memorandum of law (not including the caption, table of contents, table of authorities, and signature block as well as this certification), as established using the word count function on the word-processing system used to prepare it, complies with the word-count limitations of this Court and is **3,855** words.

Dated: July 16, 2026
     New York, NY

                         Respectfully submitted,

                         */s/ Thomas Munson*
                         Thomas Munson