UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC., et al.
Plaintiffs,
v.
CITY OF NEW YORK, et al.
Defendants.

Case No. 1:26-cv-03243-VSB-KHP

**[PROPOSED]** BRIEF OF AMICI CURIAE
NEW YORK 10-13 ASSOCIATION, INC. AND
SUPERIOR OFFICERS ASSOCIATION RETIRED, INC. ("S.O.A.R.") IN SUPPORT OF PLAINTIFFS

Counsel for Plaintiffs has advised that the PBA consents to the submission of an amicus curiae brief by New York 10-13 Association, Inc. and Superior Officers Association Retired, Inc. ("S.O.A.R.").

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .... 4
INTEREST OF AMICI CURIAE .... 5
ARGUMENT .... 6
I. CCRB'S OWN DISPOSITION CATEGORIES DISTINGUISH AN ALLEGATION FROM A FINDING OF MISCONDUCT .... 6
II. THE CONSEQUENCES OF CONTINUED PUBLIC ACCESS CAN BECOME DISTINCTLY DIFFICULT AFTER RETIREMENT .... 9
III. THE RETIREE PERSPECTIVE SUPPORTS PLAINTIFFS' EXISTING CLAIMS; IT DOES NOT ENLARGE THEM .... 14
IV. AMICI SUPPORT LAWFUL TRANSPARENCY ACCOMPANIED BY THE PROCESS REQUIRED BY LAW .... 15
CONCLUSION .... 16

# TABLE OF AUTHORITIES

**Cases**

Hank v. Codd, 424 F. Supp. 1086 (S.D.N.Y. 1975)....................11
Mullins v. City of New York, 626 F.3d 47 (2d Cir. 2010)....................11
Uniformed Fire Officers Ass'n v. De Blasio, 846 F. App'x 25 (2d Cir. 2021)*....................9

* Authority cited by Defendants in the pending motion-to-dismiss briefing.

**Statutes and Regulations**

38-A RCNY § 1-24(d)....................11
38-A RCNY § 1-36(a), (c)....................14
9 N.Y.C.R.R. § 6000.10....................10
N.Y. Civil Rights Law § 50-a (repealed 2020)....................6, 13, 16
2020 N.Y. Laws ch. 96....................13

**Rules**

Fed. R. Civ. P. 12(b)(6)....................7

**PRELIMINARY STATEMENT**

Amici are membership organizations composed of retired members of the New York City Police Department. They submit this brief for a narrow purpose: to explain what continued public dissemination of officer-identifying allegations that were not substantiated as misconduct can mean after an officer has left active service.

Plaintiffs challenge CCRB's alleged practice of disclosing officer-identifying records concerning a specifically defined group of particularly stigmatizing accusations: sexual misconduct, racial bias or profiling, and false official statements. Plaintiffs contend that the challenged disclosures occur without the process constitutionally required.

Amici recognize that other categories of serious allegations, when unfounded or not substantiated, may also carry enduring consequences. Those categories are not before the Court, however, and amici neither ask the Court to adjudicate them nor seek relief beyond the three categories challenged by Plaintiffs.

The retiree perspective is nonetheless distinct. Retirement does not end a former NYPD member's professional or community life. Searchable allegations may follow a retiree into later employment and other settings in which credibility matters, sometimes without the retiree knowing that the information was considered or having an opportunity to explain its actual disposition. The practical disadvantage in investigating and responding to the allegation can begin immediately upon retirement or other separation from service: the former member no longer occupies an official Department role, while the allegation remains searchable. Passage of time may further diminish the ability to reconstruct the incident as records become harder to locate, witnesses and supervisors leave service, and memories fade.

Amici therefore ask the Court to consider a simple asymmetry when evaluating the challenged practice: the allegation may remain readily accessible while the practical means of responding to it diminish with time.

Amici seek no relief distinct from that requested by Plaintiffs.

**INTEREST OF AMICI CURIAE**

New York 10-13 Association, Inc. was founded in 1986 for the purpose of assisting retired members of the New York City Police Department and advocating for their interests, including through legislative and judicial proceedings. For approximately forty years, New York 10-13 has advocated on matters affecting NYPD retirees.

The Superior Officers Association Retired, Inc. ("S.O.A.R.") likewise has a decades-long history of advocating on issues affecting retired NYPD members. Both organizations accept retired NYPD members from across the Department's ranks and bring substantial institutional experience concerning pension, cost-of-living, health-care, and other issues affecting members after active service has ended.

The retiree constituency implicated by the issues in this action is substantial. The New York City Police Pension Fund presently describes itself as serving approximately 53,000 retired members of the NYPD. Those retirees include former members whose police service—and whose historical CCRB matters—may extend back decades. Amici are therefore particularly positioned to explain the consequences of permanent officer-identifying dissemination after active service has ended. See City of New York Jobs, New York City Police Pension Fund, Pension Loans Representative (posted Sept. 2, 2026).

An allegation may arise at one stage of an NYPD career and remain associated with the individual through promotion and retirement; later rank or retirement does not sever that public association.

Amici do not ask the Court to create a retiree-only claim, restore former Civil Rights Law § 50-a, expand Plaintiffs' claims to other personnel or allegation categories, or require automatic deletion upon retirement.

Their interest is to explain how the challenged disclosures can continue to affect former members after active service ends, even as the practical ability to respond to an old allegation diminishes with time.

## ARGUMENT

### I. CCRB'S OWN DISPOSITION CATEGORIES DISTINGUISH AN ALLEGATION FROM A FINDING OF MISCONDUCT.

CCRB's published definitions draw material distinctions among case outcomes.

A substantiated allegation reflects sufficient credible evidence that the subject officer committed the alleged act without legal justification.

By contrast, CCRB defines an unfounded allegation as one for which there is sufficient credible evidence to believe that the subject officer did not commit the alleged act.

CCRB uses "Unable to Determine" when the available evidence is insufficient to determine whether the officer did or did not commit misconduct. CCRB has also used the term "Unsubstantiated" in its historical disposition terminology. CCRB expressly states that there is "no substantive or legal difference" between the "Unable to Determine" disposition and the "Unsubstantiated" disposition it replaced.

CCRB separately explains that an "Unable to Investigate" closure occurs when necessary cooperation cannot be obtained and the investigation must be halted; in such a case, no factual finding is made as to whether misconduct occurred.

These distinctions matter because a publicly searchable accusation can convey a materially different impression from the disposition actually reached.

Amici do not contend that every non-substantiated disposition has the same meaning. An unfounded allegation is different from an allegation for which the evidence was insufficient, and both are different from a matter that could not be investigated to a factual conclusion.

The common point relevant here is narrower: none constitutes a substantiated finding that the officer committed the alleged misconduct.

CCRB's own published materials state that a single complaint may contain multiple allegations and that each allegation is reviewed separately. The New York City Comptroller's December 2025 audit of CCRB and NYPD practices likewise describes allegation-level dispositions and explains that an overall complaint may be classified as "substantiated" when at least one allegation is substantiated even though other allegations are not. Thus, the label attached to the overall complaint does not itself establish that every allegation within it was substantiated. See NYC Civilian Complaint Review Board, Data Transparency Initiative—Allegations; Office of the New York City Comptroller, Audit on the Timeliness of Civilian Complaint Review Board's Investigations and New York City Police Department's Implementation of the Board's Recommendations (Dec. 2025). Amici cite these public materials only to describe CCRB/NYPD terminology and process; they do not ask the Court to resolve disputed merits facts outside the pleadings on the pending Rule 12(b)(6) motion.

That distinction is particularly important where a complaint contains both substantiated and non-substantiated allegations. An unfounded or otherwise non-substantiated allegation does not become established misconduct merely because a different allegation arising from the same complaint was substantiated.

A CCRB investigative disposition is also distinct from the subsequent NYPD disciplinary process. CCRB's public description of that process explains that substantiated allegations are transmitted to NYPD with a disciplinary recommendation, while the Police Commissioner retains final authority over what penalty, if any, is imposed; Charges and Specifications may proceed through plea or administrative trial before a recommendation reaches the Commissioner. See NYC Civilian Complaint Review Board, Complaint Process—Disciplinary Process & Administrative Prosecution Unit. The limited point is that an investigative disposition and a later departmental disciplinary outcome are distinct stages and should not be conflated.

Additional administrative closure labels further illustrate why precise context matters. CCRB records may identify a matter as "Miscellaneous – Subject Retired," a separation-related closure, or as "OMB PEG Directive (SRAD) Closure," a resource-allocation closure associated with CCRB's Strategic Resource Allocation Determination during budget constraints. The Comptroller's December 2025 audit reports both categories separately and explains that SRAD suspended investigation of specified stand-alone allegations, including "untruthful statements with no other allegations." Neither label, standing alone, is a merits adjudication of the underlying conduct. Amici invoke these closure categories only insofar as they appear in officer-identifying records involving one of the three allegation categories challenged by Plaintiffs, and do not equate the audit's SRAD terminology with Plaintiffs' precise "false official statements" category. See Office of the New York City Comptroller, Audit on the Timeliness of Civilian

Complaint Review Board's Investigations and New York City Police Department's Implementation of the Board's Recommendations (Dec. 2025).

Defendants themselves emphasize the importance of disposition information. In their motion to dismiss, they rely on the prior district court's observation that disposition information "will contextualize the description of the complaint or charges provided" and permit future employers to evaluate "the complaint and the investigation and its outcome independently." Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 10, ECF No. 35 (quoting Le Decl. Ex. B at 33:19-23). On appeal, the Second Circuit likewise treated disposition labels as relevant to the irreparable-harm analysis, noting the district court's finding that future employers were unlikely to be misled by records carrying "dispositional designations" specifying that allegations were unsubstantiated, unfounded, or that the accused officer was exonerated, and concluding that the district court did not abuse its discretion in finding the asserted employment harm speculative on that record. Uniformed Fire Officers Ass'n v. De Blasio, 846 F. App'x 25, 31 (2d Cir. 2021). Those observations reinforce amici's narrower point: where a matter was closed as Subject Retired, through SRAD, or otherwise without a merits determination, the significance of context depends on what the disposition actually conveys. Such a closure may accurately explain why the matter ended, but it does not itself establish whether the underlying conduct occurred.

## II. THE CONSEQUENCES OF CONTINUED PUBLIC ACCESS CAN BECOME DISTINCTLY DIFFICULT AFTER RETIREMENT.

Retired NYPD members may continue to work in security, investigations, compliance, consulting, public safety, or other fields where credibility and professional reputation are important. They also continue ordinary civic and community lives.

A searchable allegation associated with a former NYPD member's name therefore does not necessarily lose practical significance when Department employment ends.

Retirement or separation from active NYPD service does not necessarily occur late in an individual's working life. Some members leave active service substantially earlier than ordinary service retirement because of disability or other circumstances. A police career can therefore end while an individual still has decades of potential civilian employment ahead.

For those former members, publicly accessible historical allegations may affect opportunities at the earliest stages of a second career. A retiree may obtain additional education or professional credentials and pursue employment in security, investigations, compliance, management, government, law, education, financial services, or an unrelated profession. A prospective employer conducting an Internet or background search may encounter officer-identifying allegation information before deciding whether to interview the applicant. If an applicant is screened out at that preliminary stage, the retiree may never know that the historical allegation played a role and may never have an opportunity to explain its actual disposition or procedural history.

That concern is particularly concrete where a current or former NYPD member seeks subsequent law-enforcement employment in New York. State regulations require a thorough background investigation into an applicant's moral character, including review of information from previous employers and law-enforcement agencies in jurisdictions where the applicant has lived or worked, and expressly identify conduct involving dishonesty, deceit, or misrepresentation and inappropriate sexual conduct among matters relevant to that assessment. These requirements may apply whether the applicant seeks employment with another agency while still an active NYPD member or does so after retirement, disability retirement, or other separation from service. See 9 NYCRR § 6000.10 (N.Y. State Div. of Crim. Just. Servs.; emergency regulations effective Oct. 16, 2021; final regulations adopted Nov. 2, 2022).

The same concern can arise in positions requiring heightened governmental vetting. The U.S. Office of Personnel Management ("OPM") explains that background evaluations examine matters bearing on behavioral reliability and integrity and are used particularly for positions of trust, including law-enforcement positions and positions requiring government-issued security clearances. The potential relevance is especially apparent where the historical allegation concerns a false official statement, because honesty and integrity are directly pertinent to such screening. Amici do not suggest that a historical CCRB allegation determines any background-investigation or suitability outcome; the narrower point is that officer-identifying allegation information may be encountered in a setting where integrity itself is directly relevant. See U.S. Office of Personnel Management, Background Evaluation/Investigation.

The false-official-statement category presents an additional feature. NYPD members may be compelled to answer questions in official Department investigations, including the procedure historically known as a GO-15 interview, and CCRB's own rules separately provide that a police officer questioned in an official CCRB investigation who refuses to answer questions relating to official duties will be reported to the Police Commissioner and may face Department charges that could result in dismissal. See Mullins v. City of New York, 626 F.3d 47, 50 (2d Cir. 2010); Hank v. Codd, 424 F. Supp. 1086, 1088 (S.D.N.Y. 1975); 38-A RCNY § 1-24(d).

That compulsory setting has direct relevance to the challenged false-official-statement category. An officer's compelled account may later be compared with testimony, records, or prior statements; CCRB closing reports reflect investigators reviewing prior GO-15 interviews when evaluating later testimony. See, e.g., NYC Civilian Complaint Review Board, Closing Report, Case No. 201906887.

Separation from service can, however, immediately change a former member's practical ability to address an allegation. Unlike CCRB or NYPD investigators acting in an official capacity, a former member no longer acts with Department authority or within NYPD's institutional investigative structure and ordinarily has no official means to compel witness cooperation or obtain Department records through internal channels.

That loss of institutional position exists even for a recent retiree. Passage of time may compound it: witnesses may become unavailable, records may become more difficult to locate, memories may fade, and supervisors or investigators familiar with the event may themselves have separated from service.

The problem is therefore not limited to allegations arising decades earlier. A recently retired member may immediately face a publicly searchable allegation without the institutional access or official investigative mechanisms available during active service; an older matter may make reconstruction still more difficult.

The contrast is the same: the allegation may remain readily accessible while the former member's practical means of investigating and responding to it are reduced.

For retired officers in particular, the consequences of dissemination may persist even if the challenged governmental disclosure practice is later discontinued. Once officer-identifying allegations have been distributed to third parties and incorporated into publicly searchable databases, preventing future governmental disclosure alone may not eliminate the continuing effects of the earlier dissemination. The allegation may remain accessible through third-party databases or other Internet sources long after the government's own disclosure practice has

changed. This practical reality further illustrates the uniquely enduring consequences of the challenged practice for retired members.

The practical consequences of dissemination may also be amplified by third-party databases. The 50-a Database identified in Plaintiffs' Complaint aggregates officer-specific information, including CCRB allegations and dispositions, in publicly searchable officer profiles. Amici do not contend that the database is a governmental actor or ask the Court to regulate a private publisher. The point is narrower: once officer-identifying information is released and incorporated into a searchable profile, its practical accessibility may persist beyond the former member's NYPD service. See Compl. ¶¶ 7-8.

The consequences of such dissemination are not an inevitable feature of public access to police-disciplinary information. ProPublica, a nonprofit investigative news organization, took a materially different approach in its historical NYPD Files database. Its published methodology states that it excluded allegations that CCRB investigators concluded did not occur and deemed unfounded, and that it removed 62 officers whose substantiated allegations had not fully completed the NYPD administrative prosecution process. Amici do not ask the Court to regulate the editorial choices of private publishers. The comparison is relevant only to illustrate that public access to disciplinary information can coexist with distinctions among allegations based on their actual disposition and procedural posture. See ProPublica, The NYPD Files: Search Thousands of Civilian Complaints Against New York City Police Officers, "About This Data."

The changed disclosure environment is especially significant for former members whose CCRB matters concluded before the repeal of Civil Rights Law § 50-a on June 12, 2020. See 2020 N.Y. Laws ch. 96. Amici do not ask this Court to revisit the scope or effect of that repeal, do not assert a vested right in the former disclosure regime, and do not contend that pre-repeal

records are categorically exempt from current disclosure law. Their point is practical and narrower: a matter that arose and concluded before the present disclosure environment may now remain officer-identifying and readily searchable long after the officer has separated from service, while the former member's institutional ability to reconstruct and respond to it may diminish.

CCRB's rules provide a procedure for requesting reconsideration or reopening of a closed case. See 38-A RCNY § 1-36(a), (c). Amici do not contend that retirees are categorically barred from invoking that procedure. But reopening or reconsideration is not itself pre-disclosure notice, a name-clearing hearing, or a procedure specifically directed to correcting, redacting, or otherwise addressing the continuing public presentation of a closed allegation. Nor does it restore a former member's prior institutional access or official investigative authority after separation. CCRB's public Member of Service database includes an "Inactive Members of Service" category, underscoring that historical allegation information remains publicly associated with former members after separation. See NYC Civilian Complaint Review Board, NYPD Member of Service Histories.

## III. THE RETIREE PERSPECTIVE SUPPORTS PLAINTIFFS' EXISTING CLAIMS; IT DOES NOT ENLARGE THEM.

Amici do not ask the Court to create a generalized right to deletion upon retirement or to adjudicate civil lawsuits, settlements, or other information outside the disclosure practice challenged by Plaintiffs.

Instead, amici address the consequences of the practice already before the Court. Continued dissemination after separation from service can make the alleged absence of notice, an opportunity to object or be heard, or a mechanism to address publication especially consequential for retirees. See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 2, 27, ECF No. 45.

The retiree perspective supplies context for Plaintiffs' procedural due process challenge without creating a separate constitutional theory or extending Plaintiffs' claims to additional bargaining units or categories of NYPD personnel. Amici do not contend that reputational injury or diminished employment prospects, standing alone, establish the "plus" required for a federal stigma-plus claim. Rather, the retiree perspective identifies the institutional asymmetry that follows separation from service and provides context for Plaintiffs' existing theory, which remains for Plaintiffs to establish under governing law.

Amici's narrower contribution is factual and institutional: to explain how permanence, retirement, passage of time, and later professional life operate once the NYPD employment relationship has ended.

## IV. AMICI SUPPORT LAWFUL TRANSPARENCY ACCOMPANIED BY THE PROCESS REQUIRED BY LAW.

Amici do not oppose lawful transparency and do not ask the Court to restore the former § 50-a confidentiality regime.

The allegation-level disclosure challenged here can carry consequences long after the employment relationship has ended. That is particularly significant because the challenged information does not concern only adjudicated misconduct or discipline actually imposed; it may include allegations that never resulted in a finding that the accused individual committed the alleged misconduct. Transparency concerning the conduct of public officials serves important public purposes, but disclosure of substantiated misconduct is analytically different from permanent, name-linked dissemination of an accusation that the responsible investigative body did not substantiate.

The question presented by Plaintiffs is not whether substantiated misconduct may ever be disclosed. The issue raised by Plaintiffs concerns the manner in which the specifically challenged

officer-identifying allegations are disseminated and whether constitutionally adequate process accompanies that dissemination.

Transparency and procedural fairness are not mutually exclusive. The retiree experience illustrates why accurate disposition, appropriate context, and meaningful process matter.

Passage of time does not convert an unfounded allegation into misconduct, an unable-to-determine disposition into a substantiated finding, or an investigation producing no factual finding into an adjudication of wrongdoing. Nor does promotion or retirement change the historical disposition. Amici seek no relief distinct from that requested by Plaintiffs and ask the Court to consider the enduring consequences of the challenged dissemination across an officer's career and after retirement.

**CONCLUSION**

Amici submit this brief to provide the Court with the retiree perspective on the continuing consequences of the disclosure practice challenged by Plaintiffs. An allegation may remain publicly searchable through promotion, retirement or other separation from NYPD service, and later civilian employment, while the practical ability to respond may diminish at the moment of separation and further with time. A former member no longer operates within NYPD's official investigative and disciplinary structure or with its institutional access to records and witnesses. Passage of time may compound that loss, but the problem is not confined to old matters: even a recent retiree may face continued name-linked dissemination without the official tools available during active service.

That concern is particularly significant for matters arising before the June 12, 2020 repeal of Civil Rights Law § 50-a. Amici do not ask the Court to restore § 50-a, apply the former disclosure regime to present-day records, or reopen historical disciplinary determinations. Their

narrower point is that public accessibility may persist under a disclosure environment different from the one in which an older matter arose, while retirement and passage of time can make reconstruction more difficult.

The interests of retirees and active officers therefore converge. The concern is not limited to distant historical matters. A recent retiree may encounter the same practical disadvantage immediately upon separation; time can then make reconstruction more difficult. Retired members can explain consequences that extend beyond a police career, and today's active officers may confront those same consequences once their employment relationship with the City has ended.

They respectfully urge the Court to grant appropriate relief consistent with Plaintiffs' claims and, in doing so, to consider the enduring consequences of the challenged dissemination throughout an officer's career and after retirement.

Dated: October 8, 2026

Respectfully submitted,
/s/ Ronald C. Schule

Ronald C. Schule, Esq.
Counsel for Proposed Amici Curiae
New York 10-13 Association, Inc. and
Superior Officers Association Retired, Inc. ("S.O.A.R.")
260-09 Hillside Avenue
Floral Park, New York 11004
Tel.: (631) 793-3477
Email: rschuleesq@gmail.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), undersigned counsel certifies that this brief complies with the applicable word-count limitation. The brief contains 3,519 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate, as permitted by Local Civil Rule 7.1(c).

/s/ Ronald C. Schule
Ronald C. Schule, Esq.